# BENEFICIAL NATIONAL BANK ET AL. *v.* ANDERSON ET AL.

No. 02–306.   Argued April 30, 2003—Decided June 2, 2003

STEVENS, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and O'CONNOR, KENNEDY, SOUTER, GINSBURG, and BREYER, JJ., joined. SCALIA, J., filed a dissenting opinion, in which THOMAS, J., joined, *post*, p. 11.

*Seth P. Waxman* argued the cause for petitioners. With him on the briefs were *Dennis G. Lyons, Howard N. Cayne, Mary Gabrielle Sprague, Brian C. Duffy, Christopher R. Lipsett, Russell J. Bruemmer, Paul R. Q. Wolfson, Alan S. Kaplinsky,* and *Burt M. Rublin.*

*Matthew D. Roberts* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Olson, Assistant Attorney General McCallum, Deputy Solicitor General Clement, Mark B. Stern, Julie L. Williams, Daniel P. Stipano, L. Robert Griffin,* and *Douglas B. Jordan.*

*Brian M. Clark* argued the cause for respondents. With him on the brief was *Dennis G. Pantazis.**

JUSTICE STEVENS delivered the opinion of the Court.

The question in this case is whether an action filed in a state court to recover damages from a national bank for allegedly charging excessive interest in violation of both "the common law usury doctrine" and an Alabama usury statute

*\*Drew S. Days III, Beth S. Brinkmann,* and *Seth M. Galanter* filed a brief for the American Bankers Association et al. as *amici curiae* urging reversal.

Briefs of *amici curiae* urging affirmance were filed for the State of Arizona et al. by *Terry Goddard,* Attorney General of Arizona, *Mary O'Grady,* Solicitor General, *Joseph A. Kanefield,* Assistant Attorney General, and *Dan Schweitzer,* and by the Attorneys General for their respective States as follows: *Gregg Renkes* of Alaska, *Richard Blumenthal* of Connecticut, *Thurbert E. Baker* of Georgia, *Mark J. Bennett* of Hawaii, *Lisa Madigan* of Illinois, *Thomas J. Miller* of Iowa, *J. Joseph Curran, Jr.,* of Maryland, *Mike Hatch* of Minnesota, *Jeremiah W. (Jay) Nixon* of Missouri, *Peter Heed* of New Hampshire, *Patricia A. Madrid* of New Mexico, *Eliot Spitzer* of New York, *Jim Petro* of Ohio, *Hardy Myers* of Oregon, *Henry McMaster* of South Carolina, *Larry Long* of South Dakota, *Greg Abbott* of Texas, and *Christine O. Gregoire* of Washington; for AARP et al. by *Deborah M. Zuckerman, Stacy J. Canan,* and *Michael R. Schuster;* and for Consumer Attorneys of California by *James C. Sturdevant.*

may be removed to a federal court because it actually arises under federal law.   We hold that it may.

## I

Respondents are 26 individual taxpayers who made pledges of their anticipated tax refunds to secure short-term loans obtained from petitioner Beneficial National Bank, a national bank chartered under the National Bank Act.   Respondents brought suit in an Alabama court against the bank and the two other petitioners that arranged the loans, seeking compensatory and punitive damages on the theory, among others, that the bank's interest rates were usurious. App. 18–30.   Their complaint did not refer to any federal law.

Petitioners removed the case to the United States District Court for the Middle District of Alabama.   In their notice of removal they asserted that the National Bank Act, Rev. Stat. § 5197, as amended, 12 U. S. C. § 85,[1] is the exclusive provi-

---

[1] Title 12 U. S. C. § 85 provides:

"Rate of interest on loans, discounts and purchases

"Any association may take, receive, reserve, and charge on any loan or discount made, or upon any notes, bills of exchange, or other evidences of debt, interest at the rate allowed by the laws of the State, Territory, or District where the bank is located, or at a rate of 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal reserve bank in the Federal reserve district where the bank is located, whichever may be the greater, and no more, except that where by the laws of any State a different rate is limited for banks organized under state laws, the rate so limited shall be allowed for associations organized or existing in any such State under title 62 of the Revised Statutes. When no rate is fixed by the laws of the State, or Territory, or District, the bank may take, receive, reserve, or charge a rate not exceeding 7 per centum, or 1 per centum in excess of the discount rate on ninety day commercial paper in effect at the Federal reserve bank in the Federal reserve district where the bank is located, whichever may be the greater, and such interest may be taken in advance, reckoning the days for which the note, bill, or other evidence of debt has to run.   The maximum amount of interest or discount to be charged at a branch of an association located outside of the States of the United States and the District of Columbia

sion governing the rate of interest that a national bank may lawfully charge, that the rates charged to respondents complied with that provision, that Rev. Stat. § 5198, 12 U. S. C. § 86, provides the exclusive remedies available against a national bank charging excessive interest,[2] and that the removal statute, 28 U. S. C. § 1441, therefore applied.  App. 31–35.  The District Court denied respondents' motion to remand the case to state court but certified the question whether it had jurisdiction to proceed with the case to the Court of Appeals pursuant to 28 U. S. C. § 1292(b).

A divided panel of the Eleventh Circuit reversed.  *Anderson* v. *H&R Block, Inc.*, 287 F. 3d 1038 (2002).  The majority held that under our "well-pleaded complaint" rule, removal is generally not permitted unless the complaint expressly alleges a federal claim and that the narrow exception from that rule known as the "complete preemption doctrine" did not apply because it could "find no clear congressional intent to permit removal under §§ 85 and 86."  *Id.*, at 1048.  Because this holding conflicted with an Eighth Circuit decision, *Kris-*

shall be at the rate allowed by the laws of the country, territory, dependency, province, dominion, insular possession, or other political subdivision where the branch is located.   And the purchase, discount, or sale of a bona fide bill of exchange, payable at another place than the place of such purchase, discount, or sale, at not more than the current rate of exchange for sight drafts in addition to the interest, shall not be considered as taking or receiving a greater rate of interest."

[2] Section 86 provides:

"Usurious interest; penalty for taking; limitations

"The taking, receiving, reserving, or charging a rate of interest greater than is allowed by section 85 of this title, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon.   In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back, in an action in the nature of an action of debt, twice the amount of the interest thus paid from the association taking or receiving the same: *Provided,* That such action is commenced within two years from the time the usurious transaction occurred."

*pin* v. *May Dept. Stores Co.*, 218 F. 3d 919 (2000), we granted certiorari. 537 U. S. 1169 (2003).

## II

A civil action filed in a state court may be removed to federal court if the claim is one "arising under" federal law. § 1441(b). To determine whether the claim arises under federal law, we examine the "well pleaded" allegations of the complaint and ignore potential defenses: "[A] suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution. It is not enough that the plaintiff alleges some anticipated defense to his cause of action and asserts that the defense is invalidated by some provision of the Constitution of the United States." *Louisville & Nashville R. Co.* v. *Mottley,* 211 U. S. 149, 152 (1908); see *Taylor* v. *Anderson,* 234 U. S. 74 (1914). Thus, a defense that relies on the preclusive effect of a prior federal judgment, *Rivet* v. *Regions Bank of La.,* 522 U. S. 470 (1998), or the pre-emptive effect of a federal statute, *Franchise Tax Bd. of Cal.* v. *Construction Laborers Vacation Trust for Southern Cal.,* 463 U. S. 1 (1983), will not provide a basis for removal. As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim.

Congress has, however, created certain exceptions to that rule. For example, the Price-Anderson Act contains an unusual pre-emption provision, 42 U. S. C. § 2014(hh), that not only gives federal courts jurisdiction over tort actions arising out of nuclear accidents but also expressly provides for removal of such actions brought in state court even when they assert only state-law claims. See *El Paso Natural Gas Co.* v. *Neztsosie,* 526 U. S. 473, 484–485 (1999).

We have also construed § 301 of the Labor Management Relations Act, 1947 (LMRA), 29 U. S. C. § 185, as not only pre-empting state law but also authorizing removal of ac-

tions that sought relief only under state law.  *Avco Corp.* v. *Machinists*, 390 U. S. 557 (1968).  We later explained that holding as resting on the unusually "powerful" pre-emptive force of § 301:

> "The Court of Appeals held, 376 F. 2d, at 340, and we affirmed, 390 U. S., at 560, that the petitioner's action 'arose under' § 301, and thus could be removed to federal court, although the petitioner had undoubtedly pleaded an adequate claim for relief under the state law of contracts and had sought a remedy available *only* under state law.  The necessary ground of decision was that the pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.'  Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301.  *Avco* stands for the proposition that if a federal cause of action completely pre-empts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law."  *Franchise Tax Bd.*, 463 U. S., at 23–24 (footnote omitted).

Similarly, in *Metropolitan Life Ins. Co.* v. *Taylor*, 481 U. S. 58 (1987), we considered whether the "complete pre-emption" approach adopted in *Avco* also supported the removal of state common-law causes of action asserting improper processing of benefit claims under a plan regulated by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U. S. C. § 1001 *et seq.*  For two reasons, we held that removal was proper even though the complaint purported to raise only state-law claims.  First, the statutory text in § 502(a), 29 U. S. C. § 1132, not only provided an express federal remedy for the plaintiffs' claims, but also in its jurisdiction subsection, § 502(f), used language similar to the statutory language construed in *Avco*, thereby indicating

that the two statutes should be construed in the same way. 481 U. S., at 65. Second, the legislative history of ERISA unambiguously described an intent to treat such actions "as arising under the laws of the United States in similar fashion to those brought under section 301 of the Labor-Management Relations Act of 1947." *Id.*, at 65–66 (internal quotation marks and emphasis omitted).

Thus, a state claim may be removed to federal court in only two circumstances—when Congress expressly so provides, such as in the Price-Anderson Act, *supra*, at 6, or when a federal statute wholly displaces the state-law cause of action through complete pre-emption.[3] When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law. This claim is then removable under 28 U. S. C. § 1441(b), which authorizes any claim that "arises under" federal law to be removed to federal court. In the two categories of cases[4] where this Court has found complete pre-emption—certain causes of action under the LMRA and ERISA—the federal statutes at issue provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action. See 29 U. S. C. § 1132 (setting forth procedures and remedies for civil claims under ERISA); § 185 (describing procedures and remedies for suits under the LMRA).

---

[3] Of course, a state claim can also be removed through the use of the supplemental jurisdiction statute, 28 U. S. C. § 1367(a), provided that another claim in the complaint is removable.

[4] This Court has also held that federal courts have subject-matter jurisdiction to hear posessory land claims under state law brought by Indian tribes because of the uniquely federal "nature and source of the possessory rights of Indian tribes." *Oneida Indian Nation of N. Y.* v. *County of Oneida*, 414 U. S. 661, 667 (1974). Because that case turned on the special historical relationship between Indian tribes and the Federal Government, it does not assist the present analysis.

## III

Count IV of respondents' complaint sought relief for "usury violations" and claimed that petitioners "charged . . . excessive interest in violation of the common law usury doctrine" and violated "Alabama Code § 8–8–1, et seq. by charging excessive interest." App. 28. Respondents' complaint thus expressly charged petitioners with usury. *Metropolitan Life, Avco,* and *Franchise Tax Board* provide the framework for answering the dispositive question in this case: Does the National Bank Act provide the exclusive cause of action for usury claims against national banks? If so, then the cause of action necessarily arises under federal law and the case is removable. If not, then the complaint does not arise under federal law and is not removable.

Sections 85 and 86 serve distinct purposes. The former sets forth the substantive limits on the rates of interest that national banks may charge. The latter sets forth the elements of a usury claim against a national bank, provides for a 2-year statute of limitations for such a claim, and prescribes the remedies available to borrowers who are charged higher rates and the procedures governing such a claim. If, as petitioners asserted in their notice of removal, the interest that the bank charged to respondents did not violate § 85 limits, the statute unquestionably pre-empts any common-law or Alabama statutory rule that would treat those rates as usurious. The section would therefore provide the petitioners with a complete federal defense. Such a federal defense, however, would not justify removal. *Caterpillar Inc.* v. *Williams,* 482 U. S. 386, 393 (1987). Only if Congress intended § 86 to provide the exclusive cause of action for usury claims against national banks would the statute be comparable to the provisions that we construed in the *Avco* and *Metropolitan Life* cases.[5]

---

[5] Because the proper inquiry focuses on whether Congress intended the federal cause of action to be exclusive rather than on whether Congress intended that the cause of action be removable, the fact that these sections

In a series of cases decided shortly after the Act was passed, we endorsed that approach. In *Farmers' and Mechanics' Nat. Bank* v. *Dearing*, 91 U. S. 29, 32–33 (1875), we rejected the borrower's attempt to have an entire debt forfeited, as authorized by New York law, stating that the various provisions of §§ 85 and 86 "form a system of regulations . . . [a]ll the parts [of which] are in harmony with each other and cover the entire subject," so that "the State law would have no bearing whatever upon the case." We also observed that "[i]n any view that can be taken of [§ 86], the power to supplement it by State legislation is conferred neither expressly nor by implication." *Id.*, at 35. In *Evans* v. *National Bank of Savannah*, 251 U. S. 108, 114 (1919), we stated that "federal law . . . completely defines what constitutes the taking of usury by a national bank, referring to the state law only to determine the maximum permitted rate." See also *Barnet* v. *National Bank*, 98 U. S. 555, 558 (1879) (The "statutes of Ohio and Indiana upon the subject of usury . . . cannot affect the case" because the Act "creates a new right" that is "exclusive"); *Haseltine* v. *Central Bank of Springfield*, 183 U. S. 132, 134 (1901) ("[T]he definition of usury and the penalties affixed thereto must be determined by the National Banking Act and not by the law of the State").

In addition to this Court's longstanding and consistent construction of the National Bank Act as providing an exclusive federal cause of action for usury against national banks, this Court has also recognized the special nature of federally chartered banks. Uniform rules limiting the liability of national banks and prescribing exclusive remedies for their overcharges are an integral part of a banking system that needed protection from "possible unfriendly State legislation." *Tiffany* v. *National Bank of Mo.*, 18 Wall. 409, 412

---

of the National Bank Act were passed in 1864, 11 years prior to the passage of the statute authorizing removal, is irrelevant, contrary to respondents' assertions.

(1874). The same federal interest that protected national banks from the state taxation that Chief Justice Marshall characterized as the "power to destroy," *McCulloch* v. *Maryland*, 4 Wheat. 316, 431 (1819), supports the established interpretation of §§ 85 and 86 that gives those provisions the requisite pre-emptive force to provide removal jurisdiction. In actions against national banks for usury, these provisions supersede both the substantive and the remedial provisions of state usury laws and create a federal remedy for overcharges that is exclusive, even when a state complainant, as here, relies entirely on state law. Because §§ 85 and 86 provide the exclusive cause of action for such claims, there is, in short, no such thing as a state-law claim of usury against a national bank. Even though the complaint makes no mention of federal law, it unquestionably and unambiguously claims that petitioners violated usury laws. This cause of action against national banks only arises under federal law and could, therefore, be removed under § 1441.

The judgment of the Court of Appeals is reversed.

*It is so ordered.*

JUSTICE SCALIA, with whom JUSTICE THOMAS joins, dissenting.

Today's opinion takes the view that because the National Bank Act, 12 U. S. C. §§ 85, 86, provides the exclusive cause of action for claims of usury against a national bank, all such claims—even if explicitly pleaded under state law—are to be construed as "aris[ing] under" federal law for purposes of our jurisdictional statutes. *Ante* this page. This view finds scant support in our precedents and no support whatever in the National Bank Act or any other Act of Congress. I respectfully dissent.

Unless Congress expressly provides otherwise, the federal courts may exercise removal jurisdiction over state-court actions "of which the district courts of the United States

have original jurisdiction." 28 U. S. C. § 1441(a). In this case, petitioners invoked as the predicate for removal the district courts' original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." § 1331.

This so-called "arising under" or "federal question" jurisdiction has long been governed by the well-pleaded-complaint rule, which provides that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc.* v. *Williams*, 482 U. S. 386, 392 (1987). A federal question "is presented" when the complaint invokes federal law as the basis for relief. It does not suffice that the facts alleged in support of an asserted state-law claim would *also* support a federal claim. "The [well-pleaded-complaint] rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Ibid.* See also *The Fair* v. *Kohler Die & Specialty Co.*, 228 U. S. 22, 25 (1913) ("Of course the party who brings a suit is master to decide what law he will rely upon"). Nor does it even suffice that the facts alleged in support of an asserted state-law claim *do not support* a state-law claim and would *only* support a federal claim. "Jurisdiction may not be sustained on a theory that the plaintiff has not advanced." *Merrell Dow Pharmaceuticals Inc.* v. *Thompson*, 478 U. S. 804, 809, n. 6 (1986).

Under the well-pleaded-complaint rule, "a federal court does not have original jurisdiction over a case in which the complaint presents a state-law cause of action, but also asserts that federal law deprives the defendant of a defense he may raise, . . . or that a federal defense the defendant may raise is not sufficient to defeat the claim." *Franchise Tax Bd. of Cal.* v. *Construction Laborers Vacation Trust for Southern Cal.*, 463 U. S. 1, 10 (1983). Of critical importance here, the rejection of a federal defense as the basis for original federal-question jurisdiction applies with equal force

when the defense is one of federal pre-emption. "By unimpeachable authority, a suit brought upon a state statute does not arise under an act of Congress or the Constitution of the United States because prohibited thereby." *Gully* v. *First Nat. Bank in Meridian,* 299 U. S. 109, 116 (1936). "[A] case may *not* be removed to federal court on the basis of . . . the defense of pre-emption . . . ." *Caterpillar, supra,* at 393. To be sure, pre-emption requires a state court to *dismiss* a particular claim that is filed under state law, but it does not, as a general matter, provide grounds for *removal.*

This Court has twice recognized exceptions to the well-pleaded-complaint rule, upholding removal jurisdiction notwithstanding the absence of a federal question on the face of the plaintiff's complaint. First, in *Avco Corp.* v. *Machinists,* 390 U. S. 557 (1968), we allowed removal of a state-court action to enforce a no-strike clause in a collective-bargaining agreement. The complaint concededly did not advance a federal claim, but was subject to a defense of pre-emption under § 301 of the Labor Management Relations Act, 1947 (LMRA), 29 U. S. C. § 185. The well-pleaded-complaint rule notwithstanding, we treated the plaintiff's state-law contract claim as one arising under § 301, and held that the case could be removed to federal court. *Avco, supra,* at 560.

The only support mustered by the *Avco* Court for its conclusion was a statement wrenched out of context from our decision in *Textile Workers* v. *Lincoln Mills of Ala.,* 353 U. S. 448, 457 (1957), that "[a]ny state law applied [in a § 301 case] will be absorbed as federal law and will not be an independent source of private rights." To begin with, this statement is entirely unnecessary to the landmark holding in *Lincoln Mills*—that § 301 not only gives federal courts jurisdiction to decide labor relations cases but also supplies them with authority to create the governing substantive law. *Id.,* at 456. More importantly, understood in the context of that holding, the quoted passage in no way supports the proposition for which it is relied upon in *Avco*—that state-

law claims relating to labor relations necessarily *arise under* § 301. If one reads *Lincoln Mills* with any care, it is clear beyond doubt that the relevant passage merely confirms that when, in deciding cases arising under § 301, courts employ legal rules that overlap with, or are even explicitly borrowed from, state law, such rules are nevertheless rules of federal law. It is in this sense that "[a]ny state law applied [in a § 301 case] will be absorbed as federal law"—in the sense that federally adopted state rules become federal rules, not in the sense that a state-law claim becomes a federal claim.

Other than its entirely misguided reliance on *Lincoln Mills*, the opinion in *Avco* failed to clarify the analytic basis for its unprecedented act of jurisdictional alchemy. The Court neglected to explain *why* state-law claims that are pre-empted by § 301 of the LMRA are exempt from the strictures of the well-pleaded-complaint rule, nor did it explain *how* such a state-law claim can plausibly be said to "arise under" federal law. Our subsequent opinion in *Franchise Tax Board* struggled to prop up *Avco*'s puzzling holding:

> "The necessary ground of decision [in *Avco*] was that the pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.' Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301. *Avco* stands for the proposition that if a federal cause of action completely pre-empts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law." 463 U. S., at 23–24 (footnote omitted).

This passage has repeatedly been relied upon by the Court as an explanation for its decision in *Avco*. See, *e. g., ante,* at 7, *Caterpillar, supra,* at 394; *Metropolitan Life Ins. Co.* v. *Taylor,* 481 U. S. 58, 64 (1987). Of course it is not an expla-

nation at all. It provides nothing more than an account of what *Avco* accomplishes, rather than a justification (unless *ipse dixit* is to count as justification) for the radical departure from the well-pleaded-complaint rule, which demands rejection of the defense of federal pre-emption as a basis for federal jurisdiction. *Gully, supra,* at 116. Neither the excerpt quoted above, nor any other fragment of the decision in *Franchise Tax Board,* explains how or why the nonviability (due to pre-emption) of the state-law contract claim in *Avco* magically transformed that claim into one "arising under" federal law.

*Metropolitan Life Ins. Co.* v. *Taylor, supra,* was our second departure from the prohibition against resting federal "arising under" jurisdiction upon the existence of a federal defense. In that case, Taylor sued his former employer and its insurer, alleging breach of contract and seeking, *inter alia,* reinstatement of certain disability benefits and insurance coverages. *Id.,* at 61. Though Taylor invoked no federal law in his complaint, we treated his case as one arising under § 502 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U. S. C. § 1132, and upheld the District Court's exercise of removal jurisdiction. 481 U. S., at 66–67.

In reaching this conclusion, the *Taylor* Court broke no new analytic ground; its opinion follows the exception established in *Avco* and described in *Franchise Tax Board,* but says nothing to commend that exception to logic or reason. Instead, *Taylor* simply relies on the "clos[e] parallels," 481 U. S., at 65, between the language of the pre-emptive provision in ERISA and the language of the LMRA provision deemed in *Avco* to be so dramatically pre-emptive as to summon forth a federal claim where none had been asserted. "No more specific reference to the *Avco* rule can be expected," we said, than what was found in § 502(a); and we accordingly concluded that "Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of § 502(a) removable to federal

court." 481 U. S., at 66. As in *Avco* and *Franchise Tax Board,* no explanation was provided for *Avco*'s abrogation of the rule that "[f]ederal pre-emption is ordinarily a federal defense to the plaintiff's suit[, and as such] it does not appear on the face of a well-pleaded complaint, [nor does it] authorize removal to federal court."[1] 481 U. S., at 63.

It is noteworthy that the straightforward (though similarly unsupported) rule announced in today's opinion—under which (1) removal is permitted "[w]hen [a] federal statute completely pre-empts a state-law cause of action," *ante,* at 8, and (2) a federal statute is completely pre-emptive when it "provide[s] the exclusive cause of action for the claim asserted," *ibid.*—is nowhere to be found in either *Avco* or *Taylor.* To the contrary, the analysis in today's opinion implicitly contradicts (by rendering inexplicable) *Taylor*'s discussion of pre-emption and removal. (*Avco,* as I observed earlier, has no discussion to be contradicted.) Had it thought that today's decision was the law, the *Taylor* Court need not have taken pains to emphasize the "clos[e] parallels" between § 502(a)(1)(B) of ERISA and § 301 of the LMRA and need not have pored over the legislative history of § 502(a) to show that Congress expected ERISA to be treated like the LMRA. See *Taylor, supra,* at 65–66 (citing H. R. Conf. Rep. No. 93–1280, p. 327 (1974); 120 Cong. Rec. 29933 (1974) (remarks of Sen. Williams); *id.,* at 29942 (remarks of Sen. Javits)). Instead, it could have rested after noting the "unique pre-emptive force of ERISA," *Taylor, supra,* at 65. Indeed, it could even have spared itself the trouble of add-

---

[1] This is not to say that *Taylor* was wrongly decided. Having been informed through the *Avco Corp.* v. *Machinists,* 390 U. S. 557 (1968), decision that the language of § 301 triggered "arising under" jurisdiction even with respect to certain state-law claims, Congress' subsequent decision to insert language into ERISA that "closely parallels" the text of § 301 can be viewed to be, as we said, a "specific reference to the *Avco* rule." 481 U. S., at 65–66. *Taylor,* in other words, rests upon a sort of statutory incorporation of *Avco.* *Avco* itself, on the other hand, continues to rest upon nothing.

ing the adjective "unique." While there is something unique about statutes whose pre-emptive force is closely patterned after that of the LMRA (which we had held to support removal), there is nothing whatever unique about a federal cause of action that displaces state causes of action. Displacement alone, if today's opinion is to be believed, would have sufficed to establish the existence of removal jurisdiction.

The best that can be said, from a precedential perspective, for the rule of law announced by the Court today is that variations on it have twice appeared in our cases in the purest dicta. *Rivet* v. *Regions Bank of La.*, 522 U. S. 470, 476 (1998) ("[O]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state-law claim is considered, from its inception, a federal claim, and therefore arises under federal law" (internal quotation marks omitted)); *Caterpillar*, 482 U. S., at 393 ("[I]f a federal cause of action completely pre-empts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law" (some internal quotation marks omitted)). Dicta of course have no precedential value, see *U. S. Bancorp Mortgage Co.* v. *Bonner Mall Partnership*, 513 U. S. 18, 24 (1994), even when they do not contradict, as they do here, prior holdings of the Court.

The difficulty with today's holding, moreover, is not limited to the flimsiness of its precedential roots. As has been noted already, the holding cannot be squared with bedrock principles of removal jurisdiction. One or another of two of those principles must be ignored: Either (1) the principle that merely setting forth in state court facts that would support a federal cause of action—indeed, even facts that would support a federal cause of action and would *not* support the claimed state cause of action—does not produce a federal question supporting removal, *Caterpillar*, 482 U. S., at 391, or (2) the principle that a federal defense to a state

cause of action does not support federal-question jurisdiction, see *id.*, at 393. Relatedly, today's holding also represents a sharp break from our long tradition of respect for the autonomy and authority of state courts. For example, in *Healy* v. *Ratta*, 292 U. S. 263, 270 (1934), we explained that "[d]ue regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined." And in *Shamrock Oil & Gas Corp.* v. *Sheets*, 313 U. S. 100, 108 (1941), we insisted on a "strict construction" of the federal removal statutes.[2] Today's decision ignores these venerable principles and effectuates a significant shift in decisional authority from state to federal courts.

In an effort to justify this shift, the Court explains that "[b]ecause [12 U. S. C.] §§ 85 and 86 provide the exclusive cause of action for such claims, there is . . . no such thing as a state-law claim of usury against a national bank." *Ante*, at 11. But the mere fact that a state-law claim is invalid no more deprives it of its character as a state-law claim which does not raise a federal question, than does the fact that a federal claim is invalid deprive it of its character as a federal claim which does raise a federal question. The proper response to the presentation of a nonexistent claim to a state court is *dismissal*, not the "federalize-and-remove" dance authorized by today's opinion. For even if the Court is correct that the National Bank Act obliterates entirely any state-created right to relief for usury against a national bank, that does not explain how or why the claim of

---

[2] Our traditional regard for the role played by state courts in interpreting and enforcing federal law has other doctrinal manifestations. We indulge, for example, a "presumption of concurrent [state and federal] jurisdiction," which can be rebutted only "by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests." *Gulf Offshore Co.* v. *Mobil Oil Corp.*, 453 U. S. 473, 478 (1981).

such a right is transmogrified into the claim of a federal right. Congress's mere act of creating a federal right and eliminating all state-created rights *in no way* suggests an expansion of federal jurisdiction so as to wrest from state courts the authority to decide questions of pre-emption under the National Bank Act.

Petitioners seek to justify their end run around the well-pleaded-complaint rule by insisting that, in determining whether federal jurisdiction exists, we are required to " 'look beyond the pleadings.' " Brief for Petitioners 18 (quoting *Indianapolis* v. *Chase Nat. Bank*, 314 U. S. 63, 69 (1941)). They point out:

> "[A] long line of cases disallow[s] manipulations by plaintiffs designed to create or avoid diversity jurisdiction, such as misaligning the interests of the parties, naming parties (whether plaintiffs or defendants) who have no real interest in or relationship to the controversy, misstating the citizenship of a party (whether plaintiffs or defendants), or misstating the amount in controversy." Brief for Petitioners 17–18.

Petitioners insist that, like the "manipulative" complaints in these diversity cases, "[r]espondents' complaint is disingenuously pleaded, not 'well pleaded' in any respect, for it purports to raise a state law claim that does not exist." *Id.*, at 16. Accordingly, the argument continues, just as federal courts may assert jurisdiction where a plaintiff seeks to hide the true citizenship of the parties, so too they may assert jurisdiction where a plaintiff cloaks a necessarily federal claim in state-law garb.

To begin with, the cases involving diversity jurisdiction are probably distinguishable on the ground that there is a crucial difference between, on the one hand, "looking beyond the pleadings" to determine whether a factual assertion is true, and, on the other hand, doing so in order to determine whether the plaintiff has proceeded on the basis of the "cor-

rect" legal theory. But even assuming that the analogy to the diversity cases is apt, petitioners can derive no support from it in this case. Their argument proceeds from the faulty premise that if one looks behind the pleadings in this case, one discovers that the plaintiffs have, in fact, presented a federal claim. But that begs the question—that is, it assumes the answer to the very question presented. It assumes that whenever a claim of usury is brought against a national bank, that claim is a federal one. As I have discussed above, neither logic nor precedent supports that conclusion; they support, at best, the proposition that the only *viable* claim against a national bank for usury is a federal one. Federal jurisdiction is ordinarily determined—invariably determined, except for *Avco* and *Taylor*—on the basis of what claim is pleaded, rather than on the basis of what claim can prevail.

There may well be good reasons to favor the expansion of removal jurisdiction that petitioners urge and that the Court adopts today. As the United States explains in its *amicus* brief:

> "Absent removal, the state court would have only two legitimate options—to recharacterize the claim in federal-law terms or to dismiss the claim altogether. Any plaintiff who truly seeks recovery on that claim would prefer the first option, which would make the propriety of removal crystal clear. A third possibility, however, is that the state court would err and allow the claim to proceed under state law notwithstanding Congress's decision to make the federal cause of action exclusive. The complete pre-emption rule avoids that potential error." Brief for United States as *Amicus Curiae* 17–18.

True enough, but inadequate to render today's decision either rational or properly within the authority of this Court. Inadequate for rationality, because there is no more reason

to fear state-court error with respect to federal pre-emption accompanied by creation of a federal cause of action than there is with respect to federal pre-emption unaccompanied by creation of a federal cause of action—or, for that matter, than there is with respect to *any* federal defense to a state-law claim. The rational response to the United States' concern is to eliminate the well-pleaded-complaint rule entirely. And inadequate for judicial authority, because it is up to Congress, not the federal courts, to decide when the risk of state-court error with respect to a matter of federal law becomes so unbearable as to justify divesting the state courts of authority to decide the federal matter. Unless and until we receive instruction from Congress that claims pre-empted under the National Bank Act—in contrast to almost all other claims that are subject to federal pre-emption—"arise under" federal law, we simply lack authority to "avoi[d] . . . potential errors," *id.*, at 18, by permitting removal.

\*　\*　\*

Today's opinion has succeeded in giving to our *Avco* decision a theoretical foundation that neither *Avco* itself nor *Taylor* provided. Regrettably, that theoretical foundation is itself without theoretical foundation. That is to say, the more general proposition that (1) the existence of a pre-emptive federal cause of action causes the invalid assertion of a state cause of action to raise a federal question, has no more logic or precedent to support it than the very narrow proposition that (2) the LMRA *(Avco)* and statutes modeled after the LMRA *(Taylor)* cause invalid assertions of state causes of action pre-empted by those particular statutes to raise federal questions. Since I believe that, as between an inexplicable narrow holding and an inexplicable broad one, the former is the lesser evil, I would adhere to the approach taken by *Taylor* and on the basis of *stare decisis* simply affirm, without any real explanation, that the LMRA and statutes modeled after it have a "unique pre-emptive force" that

(quite illogically) suspends the normal rules of removal jurisdiction. Since no one asserts that the National Bank Act is modeled after the LMRA, the state-law claim pleaded here cannot be removed, and it is left to the state courts to dismiss it. From the Court's judgment to the contrary, I respectfully dissent.