DEACERO, S.A. DE C.V., Plaintiff,

v.

CORE FURNACE SYSTEMS CORP.,
f/k/a Techint Technologies Inc.,
Defendant.

No. Civ.A.05–1016.

United States District Court,
W.D. Pennsylvania.

Nov. 21, 2005.

August T. Horvath, Joseph T. McLaughlin, Kathleen M. Scanlon, Richard A. Martin, Heller, Ehrman, New York, NY, David J. Armstrong, John W. Burns, Dickie, McCamey & Chilcote, Pittsburgh, PA, for Plaintiff.

Andrew L. Noble, David G. Oberdick, Meyer, Unkovic & Scott LLP, Pittsburgh, PA, for Defendant.

## MEMORANDUM AND ORDER

AMBROSE, Chief Judge.

### I. MEMORANDUM

For the reasons that follow, the Defendant's Motion to Dismiss will be granted and this case dismissed with prejudice.

The Plaintiff ("DeAcero") is a Mexican company that makes steel products, and the Defendant ("Core") is a Pennsylvania company that, among other things, provides engineering and equipment installation services. *See generally* Compl. (Doc.

*Benefit Services, et al.,* Civ. A. No. 05–604.

1) at ¶¶ 2–5.[1] In July 2000, the parties entered into a letter agreement establishing a two-phase project for improving DeAcero's mill in Saltillo Coahuillo, Mexico ("the Mill"). *See generally id.* at ¶¶ 2, 4, 6. Phase one contemplated Core's generation of "a set of engineering drawings" for improvements to be made on the Mill's furnace. *See id.* at ¶ 6. Phase two "was an option offered to DeAcero to purchase the balance of engineering works and the equipment and services" described in Core's proposal. *See id.*

Core completed, and was paid for, the engineering drawings addressed in phase one. *See id.* at ¶ 8. Dissatisfied with the work product, however, DeAcero declined Core's offer regarding phase two. *See id.* Instead, the company retained the services of Danieli & C. Officine Meccaniche S.p.A. ("Danieli"). *See id.* at ¶¶ 5, 8. Although Danieli purportedly "developed its own engineering drawings and methods," Core has asserted that DeAcero/Danieli misappropriated trade secrets and/or technology in connection with the project. *See generally id.* at ¶¶ 8, 9, 11–13.

What has followed is an onslaught of legal actions in a variety of tribunals around the globe. *See generally, e.g., id.* at ¶ 11 (discussing Core's August 2003 claim with Federal District Attorney in Mexico, alleging misappropriation of trade secrets); *id.* at ¶ 12 (Core's September 2003 action in Mexican Institute of Industrial Property, for infringement of Mexican

patents); *id.* at ¶ 13 (Core's initiation of arbitration proceedings in Pittsburgh, Pennsylvania in October 2003); *and id.* at ¶ 16 (DeAcero and Danieli's December 2003 claims before Italy's Court of Trieste). The only proceeding relevant for the purposes of this discussion, however, is the arbitration in Pittsburgh ("the Arbitration Proceedings" or "the Arbitration"). *See generally id.* at ¶ 13.

As referenced above, Core initiated the Arbitration on October 31, 2003. *See id.; see also* Ex. 2 to Doc. 22 (Core's "Demand for Arbitration" under American Arbitration Association's Construction Industry Arbitration Rules). On December 10, 2003, DeAcero filed an "Answering Statement" asserting, among other things:

> The contract for the preliminary engineering services [*i.e.*, phase one as described above], does not contain an arbitration provision. The arbitration provision cited by [Core] ... is taken from the proposal that was associated with the second offer [*i.e.*, phase two], but that offer was never accepted by DeAcero. Therefore, there is no agreement to arbitrate. *Nevertheless, DeAcero will arbitrate this dispute with [Core] as a submission under Rule 5 of the Arbitration Rules and Procedures,* but reserves the right to object to jurisdiction in Pennsylvania.

*See* DeAcero's Answering Statement (Ex. 3 to Doc. 22) at 3 (footnote omitted, emphasis added).[2]

---

1. Core's predecessor-in-interest was Techint Technologies Inc. ("Techint"). *See generally id.* at caption (stating Core was "f[ormerly]/k[nown]/a[s]" Techint); *id.* at ¶ 5 (alleging that, at relevant times, Core was "then called Techint"); *and id.* at ¶ 18 ("Techint and Core are each other's alter egos"). The distinction of identity between these two entities, to the extent it existed, is immaterial for the purposes of the analyses below. Accordingly, the court's references to "Core" should be understood to include Techint where appropriate.

2. As recognized by DeAcero's counsel, Rule 5 provides:

> Parties to any existing dispute may commence an arbitration under these rules by filing at any office of the AAA two copies of a written submission to arbitrate under these rules, signed by the parties.

*See* AAA Arb. Rules Commercial Arbitration Rules & Mediation Procedures (Jul. 1, 2003); *see also* DeAcero's Mem. (Doc. 5) at 28 (quoting same).

The Answering Statement was signed on behalf of DeAcero by its counsel. *See id.* at 6.

On September 29, 2004, and after engaging in substantial advocacy in the Arbitration Proceedings,[3] DeAcero filed an Amended Answering Statement that omitted its prior agreement to arbitrate. *See* Ex. 17 to Doc. 22 at 3; *see also* Compl. at ¶ 14. The same day, DeAcero filed a motion to dismiss for lack of jurisdiction, arguing among other things that it never agreed to arbitrate. *See* Ex. 18 to Doc. 22 (filed under seal) at ¶¶ 10–11 (arguing same). In an Order dated November 19, 2004, the arbitrators denied DeAcero's motion to dismiss. *See* Ex. 19 to Doc. 22.[4]

Over eight months later DeAcero filed this lawsuit, again disclaiming its agreement to arbitrate and seeking to compel the litigation of Core's claims in federal court. *See generally* Compl. In a pending Motion to Stay the Arbitration, DeAcero summarizes its position:

> DeAcero seeks a determination from the Court that ... [the] 'trade secrets' alleged by Core [in the Arbitration are], in fact, not ... trade secret[s] ... but [were] disclosed or made possible by publication in an issued patent or patent application. Core's claims ... are therefore actually claims of patent infringement masked as claims for misappropriation of trade secrets and breach of contract.

*See* DeAcero's Mem. (Doc. 5) at 17; *see also generally* DeAcero's Opp'n Br. (Doc. 52) at 1 ("[i]t is hornbook intellectual property law that information disclosed in a patent is no longer and can never thereafter be a 'trade secret'"). DeAcero prays that the District Court shut down the arbitration proceedings and enter judgment in its favor on Core's "supposed trade secret alleg[ations]." *See generally* Compl. at final Wherefore clause, para. A.

The first problem with DeAcero's position, in this court's mind, is one of jurisdiction. *See generally Liberty Mut. Ins. Co. v. Ward Trucking Corp.*, 48 F.3d 742, 750 (3d Cir.1995) ("federal courts have an ever-present obligation to satisfy themselves of their subject matter jurisdiction") (citations omitted). Simply stated, the company has identified no basis for the court's

---

**3.** Core's Motion to Dismiss identifies the efforts taken by DeAcero between the time it agreed to arbitrate in December 2003 and then changed its mind in September 2004. *See* Core's Mot. at ¶¶ 20–30 (identifying DeAcero's unsuccessful litigation of its "Motion to Dismiss Or Stay," denied by arbitrators on June 29, 2004; DeAcero's service of discovery on Core and Core's responses thereto; and Core's service of discovery on DeAcero and DeAcero's responses thereto); *cf. also* Exs. attached to Core's Mot. (providing evidentiary support regarding same).

**4.** In the Arbitration Proceedings, DeAcero took the position that it had agreed to arbitrate with Core, not Techint. *See* Ex. 18 to Doc. 22 at ¶ 10 ("DeAcero never agreed to arbitrate with Techint"). This theory would appear difficult to square with the allegations here, let alone in the Arbitration. *See* discus-

sion *supra* (Core was "f[ormerly]/k[nown]/a[s]" Techint and they are "each other's alter egos"); *compare also* Core's Demand for Arbitration (identifying claimant as Core, "f/k/a Techint") *with* original Answering Statement ("DeAcero will arbitrate this dispute with *Techint*") (emphasis added); *cf. also generally Whiting v. Krassner*, 391 F.3d 540, 543–44 (3d Cir.2004) (doctrines like judicial estoppel "preserve the integrity of the judicial system by preventing parties from playing fast and loose with the courts in assuming inconsistent positions") (citations and internal quotations omitted), *cert. denied*, —— U.S. ——, 125 S.Ct. 2938, 162 L.Ed.2d 871 (2005). In any event, the point remains that DeAcero first agreed to arbitrate, later disclaimed the agreement, and then litigated and lost the issue of arbitrability in the Arbitration Proceedings. *See* discussions *supra*.

exercise of federal question jurisdiction.[5]

All the Complaint says regarding jurisdiction is as follows:

> The subject matter of Core's claims in the Arbitration ... is dependent upon Core owning ... 'trade secrets'.... However, under United States Patent Law, ... Core did not own or control rights in any trade secrets ... because [they] were effectively or fully disclosed in [Core]'s ... [p]atents.
>
> Because the alleged trade secrets ... have been disclosed in [U.S. p]atents, such trade secrets—to the extent they ever existed—were extinguished with the publication of the [patent] applications.... Core's claims in the Arbitration are, therefore, actually claims of patent infringement masked as claims for misappropriation of trade secrets and breach of contract. *Properly pled, these claims arise under the United States Patent Act* .... This Court therefore has original jurisdiction under [said Act].

*See id.* at ¶¶ 21–22 (emphasis added).

As just seen, DeAcero's purported "federal question" seeks to recast Core's state law claims for trade secret misappropriation and breach of contract as federal patent law claims, and then compel their resolution here. If any authority for this approach exists, it is identified in neither DeAcero's pleadings nor its voluminous legal briefing.

What the Complaint does make clear, however, is DeAcero's understanding that it seeks declaratory relief. *See, e.g., id.* at various "Wherefore" clauses (seeking "declarations"). Under the law, the Declara-

ry Judgment Act ("the DJA") allows "a party [that] traditionally would be a defendant [to] bring a preemptive suit in federal court, thus accelerating the claim against it." *See Discover Bank v. Vaden,* 396 F.3d 366, 371 (4th Cir.2005). Even had DeAcero invoked the DJA, however, it is far from clear that such an action would be appropriate where, as here, the substance of the underlying suit already is being litigated in arbitration. *Compare id.* (under DJA, putative defendant files *"preemptive* suit" and federal court *"hypothesize[s]* what a well-pleaded complaint ... would look like") (emphasis added) *with* discussions *supra* (indicating that actual claims for misappropriation of trade secrets and breach of contract have been brought in Arbitration Proceedings); *cf. also* 22A Am. Jur.2d Declaratory Judgments § 123 (Aug. 2005) ("[d]eclaratory judgment may be denied where the question involved is already the subject of a pending arbitration proceeding") (citation omitted).

■ Even assuming DeAcero had or could support its unorthodox jurisdictional approach, moreover, the law recognizes that "if, but for the availability of the declaratory judgment procedure, *the federal claim would arise only as a defense to a state created action, jurisdiction is lacking.*" *See id.* (citations and internal quotations omitted, emphasis added). Undoubtedly, DeAcero raises federal patent law as part of its defense to state law claims, and the above rule therefore counsels against the exercise of jurisdiction. *See id.* At the very least, DeAcero's theory hinges upon legal and factual presuppositions that render jurisdiction inappropriate under the

---

**5.** The pleadings' reference to diversity jurisdiction is superfluous. *Cf.* Compl. at ¶ 23. DeAcero has identified no state law claims, and its arguments for federal court intervention all relate to U.S. patent law. *See* discussion immediately *infra; cf. also generally Lib-*

*erty Mut. Ins. Co. v. Treesdale, Inc.,* 419 F.3d 216, 228 (3d Cir.2005) (under *Erie* doctrine, "federal courts *sitting in diversity* apply *state substantive law"* ) (citation and internal quotations omitted, emphasis added).

well-pleaded complaint rule. *See Board of Regents v. Nippon Tel. & Tel. Corp.,* 414 F.3d 1358, 1365 (Fed.Cir.2005) (rejecting argument that state law claims "[arose] under" federal patent law, including assertion that plaintiff's "trade secret claims were extinguished when it filed [a] patent application"; while Supreme Court has "distinguished between protection afforded inventors under federal patent laws and state trade secret laws and held that states [can]not provide trade secret protection that conflict[s] with the federal patent scheme," it did not hold "that patent laws preempt a patentee's right to recover under theories sounding in either contract or tort for misappropriation of property protected under state law at the time of its misappropriation").

■ In the end, DeAcero's desire to litigate Core's claims in federal court must yield to Core's intentions as "the master of [its underlying] claim[s]." *See Beneficial Nat. Bank v. Anderson,* 539 U.S. 1, 12–13, 123 S.Ct. 2058, 156 L.Ed.2d 1 (U.S.2003).[6] For this and all of the other reasons stated above, DeAcero's allegations are insufficient and the court lacks subject matter jurisdiction.

■ Even if DeAcero could establish jurisdiction, its claims would get no further. Under the law, the company has waived its objections to moving forward with the Arbitration.

The court in *Mays v. Lanier Worldwide, Inc.* succinctly summarizes the standards relied upon herein:

> [C]ourts have uniformly held that to the extent a party is entitled to challenge the validity of an agreement to arbitrate, *the time to raise that issue is before the matter goes to arbitration, not after.* ... Otherwise, a party could hold back, await the outcome of the arbitration, and then blithely render it null simply by challenging the validity of the proceedings....
>
> Thus, ... *the failure to challenge arbitrability in a timely fashion and subsequent participation in the arbitration proceedings will result in the waiver of the right to object to the fact of the proceedings.*

*See id.,* 115 F.Supp.2d 1330, 1340 (M.D.Ala.2000) (citations and internal quotations omitted).

The legal principles just cited strongly support a finding of waiver here. Core initiated the Arbitration on October 31, 2003. *See* discussion *supra.* Less than two months later, DeAcero agreed in its signed Answering Statement to "arbitrate this dispute ... as a submission under Rule 5 of the Arbitration Rules and Proce-

---

**6.** The *Anderson* Court described the great deference afforded under the well-pleaded complaint rule:

> [For the purposes of jurisdiction, *i]t does not suffice that the facts alleged in support of an asserted state-law claim would also support a federal claim.* The [well-pleaded-complaint] rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law.... *Nor does it even suffice that the facts alleged in support of an asserted state-law claim do not support a state-law claim and would only support a federal claim. Jurisdiction may not be sustained on a theo-*ry that the plaintiff has not advanced. ... [Nor does] a federal court ... have original jurisdiction over a case in which the complaint presents a state-law cause of action, but also asserts that federal law deprives the defendant of a defense he may raise, ... or that a federal defense the defendant may raise is not sufficient to defeat the claim.... *[T]he rejection of a federal defense as the basis for original federal-question jurisdiction [even extends to a] defense ... of [alleged] federal pre[ ]emption.*

*See id.* (numerous citations and internal quotations omitted, emphasis added).

dures." *See id.*[7] Then, after engaging in nine months of advocacy in the Arbitration, DeAcero decided it no longer wanted to arbitrate. In November 2004, the arbitrators denied DeAcero's challenge to arbitrability, and the company waited yet another eight months before seeking relief here. *See* discussions *supra.*

After twenty months of arbitration, including the selection of arbitrators,[8] DeAcero's litigation of two unsuccessful motions to dismiss, and its participation in substantial discovery efforts, the company asks the court to nullify these efforts and exert jurisdiction over Core's claims. DeAcero is too late, and it has through its conduct waived any objections to the Arbitration. *See* discussions *supra.*

In the undersigned's opinion, the facts and circumstances discussed above present a compelling case of waiver. Thus, the court sees little utility in comparing and contrasting this case with the fact-intensive analyses of the other courts that have found or declined to find a waiver. It generally bears noting, though, that the lack of a final decision by the arbitrators is immaterial. *See, e.g., Nghiem,* 25 F.3d at 1440 ("even though [the objector] attempted to deny the arbitrator's authority before a decision was issued, [i]t would be unreasonable and unjust to allow [him] to challenge the legitimacy of the arbitration process, in which he had voluntarily participated over a period of several months")

(citation and internal quotations omitted, some alterations in original). This is particularly true here, where the parties have expended significant time and energy litigating relatively complex issues in a seemingly high-stakes dispute.

Finally, the only case cited by DeAcero that meaningfully addresses waiver concluded that the litigant there had failed to engage the arbitration process in any meaningful way. *See* DeAcero's Opp'n Br. (Doc. 52) at 22–23 (citing *In re Miller, Inc.,* 1998 WL 193213, *3 (S.D.N.Y. Apr.21, 1998), *aff'd,* 173 F.3d 844 (2d Cir. Mar.9, 1999) (table), *cert. denied,* 528 U.S. 821, 120 S.Ct. 66, 145 L.Ed.2d 56 (1999)); *see also Miller* at *3 ("minimal participation, amounting for the most part to efforts to postpone or delay arbitration, does not mean that the [objector] waived its right[s]") (citation and internal quotations omitted). And though DeAcero attempts to paint its participation in the same light, the company's contentions ring hollow. *Compare* Compl. at ¶ 17 ("the Arbitration *is still procedurally in its early* stages and very few activities have taken place") *with* discussions *supra* (discussing substantial litigation efforts taken during twenty months between filing of Arbitration and this lawsuit).

For all of the reasons stated above, the court enters the following:

---

**7.** This conduct, on its face, defeats DeAcero's arguments regarding the "signed writing" requirement in Rule 5. *Compare* DeAcero's Mem. (Doc. 5) at 28 *with* discussion *supra* in text (highlighting company's signed agreement to arbitrate under same Rule); *cf. also generally Nghiem v. NEC Elec., Inc.,* 25 F.3d 1437, 1440 (9th Cir.) (even where technical writing requirements are not met, "[a]n agreement to arbitrate an issue need not be express" and "may be implied from the conduct of the parties") (citations and internal quotations omitted, alteration in original),

*cert. denied,* 513 U.S. 1044, 115 S.Ct. 638, 130 L.Ed.2d 544 (1994).

**8.** *Compare* Doc. 22 at ¶¶ 20–21 (Core's uncontested allegations regarding DeAcero's active participation in arbitrator selection process) *with* 1 Domke on Commercial Arbitration § 23:9 (Aug.2005) ("[a]ny challenge ... against the enforcement of the arbitration agreement will be waived when [the objecting] party participates in the selection of arbitrators").

## II. *ORDER*

AND NOW, on this *21*th day of *Nov.*, 2005, IT IS HEREBY ORDERED that Core's Motion to Dismiss (Doc. 22) is **GRANTED**, all remaining Motions and requests are **DENIED AS MOOT**, and DeAcero's lawsuit is **DISMISSED WITH PREJUDICE**.