JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Appellant Frank Cercone appeals the trial court's order compelling him to arbitrate his discrimination claim. He sets forth the following assigned error:
 "I. The trial court erred when it granted defendant-appellees' motion to compel arbitration and to dismiss the proceedings."
 {¶ 2} Having reviewed the record and pertinent law, we reverse the trial court's decision and remand for further proceedings. The apposite facts follow.
 History of the Case {¶ 3} On March 23, 2001, Merrill Lynch, Pierce, Fenner Smith ("Merrill Lynch") hired Cercone as a financial advisor. When he was hired, Cercone negotiated for and received an upfront payment of $975,000 from Merrill Lynch, in the form of a "forgivable loan." The "forgivable loan" was paid off by monthly payments that Merrill Lynch provided to Cercone under the condition that he remained employed at Merrill Lynch for at least five years. In the event Cercone resigned or was terminated for cause prior to the expiration of the five years, Cercone agreed he would pay Merrill Lynch the portion of the loan not paid.
 {¶ 4} On January 25, 2003, Merrill Lynch terminated Cercone and demanded immediate payment of the loan. Merrill Lynch claimed it terminated Cercone for cause based on complaints made by several female employees that Cercone sexually harassed them. Cercone contends he was not terminated for cause, but was terminated because he suffers from Attention Deficit Hyperactivity Disorder ("ADHD"). *Page 4 
 {¶ 5} On September 30, 2003, Merrill Lynch commenced an arbitration proceeding against Cercone before the National Association of Securities Dealers ("NASD")[1] contending that Cercone was obligated to repay the promissory note. Cercone asserted a counterclaim, contending in part that he was relieved of his obligation to repay the note because Merrill Lynch did not terminate him for cause and alleged claims for disability discrimination, deceptive trade practices, intentional infliction of emotional distress, constructive discharge, and retaliation.
 {¶ 6} On April 21, 2006, Merrill Lynch's counsel sent a letter to the NASD, on behalf of both parties advising it that the parties had settled and that the NASD should dismiss the case. The NASD sent a response letter on April 28, 2006 informing the parties that the case was being removed from the arbitration docket. The letter also advised that "if this case has not settled or should not have been withdrawn, please notify this office by May 8, 2006. After May 8, 2006 has elapsed, NASD Dispute Resolution will not reopen this case."
 {¶ 7} The parties were unable to agree on how to structure the payment plan in order to avoid tax consequences to Cercone; therefore, the parties were unable to settle. On May 8, 2006, Merrill Lynch's counsel sent a letter to the NASD requesting additional time to *Page 5 
finalize the tax issue. The only response from the NASD was a letter requesting payment of the incurred fees.
 {¶ 8} Because the parties had reached an impasse regarding settlement, Cercone filed a complaint on July 20, 2006 in the common pleas court, against Merrill Lynch, and Cercone's supervisors, John Inhouse and David Ruckman. He alleged he was discriminated against because of his ADHD, that his termination violated public policy, and the defendants' conduct constituted intentional infliction of emotional distress.
 {¶ 9} Merrill Lynch responded by filing a motion to compel arbitration and to dismiss the proceeding, or, in the alternative, to stay the proceeding. Merrill Lynch argued mandatory arbitration was required because when Cercone accepted the job, he filed and signed a "Uniform Application for Securities Act Registration or Transfer," commonly known as a U-4 Form. This form required mandatory arbitration of disputes between the financial advisor and his or her firm. Merrill Lynch also argued that Cercone waived his right to pursue his claims in a state court action because he participated in a prior arbitration proceeding in which he raised his claims.[2]
 {¶ 10} Cercone responded to Merrill Lynch's motion by arguing that his application for his registraton specifically exempted claims of discrimination from mandatory arbitration. *Page 6 
He also contended his agreement to arbitrate the prior dispute before the NASD related only to that proceeding, which had never actually gone to arbitration.
 {¶ 11} The trial court granted Merrill Lynch's motion to dismiss, stating:
 "Plaintiff's claims against the defendant and any counterclaims asserted by defendants arising from plaintiff's claims are subject to the agreement to arbitrate executed 2/27/01 between the parties as evidenced on the Form U-4, page 4, paragraph 5.
 "Case is hereby dismissed from this court's docket and shall be subject to arbitration by the National Association of Securities Dealer, Inc. under the Federal Arbitration Act."[3] Standard of Review {¶ 12} Prior to addressing the merits of the parties' arguments, we must determine the appropriate standard of review. Cercone contends that a de novo standard of review is appropriate; conversely, appellees espouse that an abuse of discretion standard of review applies to factual findings made by the trial court, while a de novo standard of review applies to the trial court's interpretation of the arbitration agreement.
 {¶ 13} The Ohio Supreme Court in Taylor Bldg. Corp. of Am. v.Benfield, [4] recently held that merely because Ohio policy favors arbitration, is not a reason to abandon the de novo standard of review when issues of law are at issue concerning the enforcement of an *Page 7 
arbitration clause. The Court specifically held that the determination of whether an arbitration clause is unconscionable is a question of law, therefore, a de novo standard of review applied. The Court also held, however, that any findings of fact made by the trial court in determining the unconscionability should be given deference.
 {¶ 14} The instant case does not concern unconscionability. However, we conclude that the de novo standard of review applies in the instant case because whether the parties are bound by an arbitration provision requires an interpretation of the contract, which is a question of law.[5] We note that the trial court did not make any findings of fact in granting Merrill Lynch's motion to compel, it merely stated as a matter of law that Cercone was bound by the agreement. Therefore, we will proceed under the de novo standard of review.
 U-4 Form Arbitration Provision {¶ 15} Pursuant to NASD requirements and as a condition of employment with Merrill Lynch, Cercone executed a U-4 Form. The U-4 Form contained the following provision concerning arbitration:
 "I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the SRO's indicated in Item 11, as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction."[6] *Page 8 
 {¶ 16} This clause does not specifically delineate the types of claims subject to arbitration. However, NASD Rule 10201(b), effective January 1, 1999, which governs the submissions to the NASD for arbitration, provides registered employees the option of bringing statutory discrimination claims in court in lieu of arbitration. Specifically, Rule 10201(b) provides:
 "(b) A claim alleging employment discrimination, including a sexual harassment claim, in violation of statute is not required to be arbitrated. Such a claim may be arbitrated only if the parties have agreed to arbitrate it, either before or after the dispute arose."
 {¶ 17} The Securities Exchange Commission ("SEC") discussed the amendment of the rule in its notice of the change and stated:
 "New paragraph (b) provides that claims alleging employment discrimination, including sexual harassment, in violation of a statute are not required to be arbitrated by NASD rules. This means that such claims may be filed in the appropriate court, if the employee chooses to do so and is not under an enforceable predispute obligation to arbitrate the dispute. An employee also may agree to arbitrate after a dispute arises. (footnotes omitted).[7]
 {¶ 18} The enactment put an end to the compulsory arbitration of discrimination claims. Thus, the U-4 form, signed by Cercone, did not require mandatory arbitration of his discrimination claim. *Page 9 
 {¶ 19} The question remains, however, whether by raising a counterclaim in the prior arbitration, which included a claim of discrimination, Cercone voluntarily agreed to arbitrate the claim as provided in Rule 10201(b).
 {¶ 20} In order to invoke the NASD's jurisdiction to hear the arbitration, the parties must submit a statement of the claim, a filing fee, and a form entitled Uniform Submission Agreement ("submission agreement"), in which the parties agree to submit the dispute to arbitration and agree the NASD rules governing arbitration apply. Merrill Lynch submitted such a form in conjunction with its desire to enforce payment on the note; Cercone also filed a form regarding his counterclaim. Merrill Lynch contends that by submitting the form, Cercone agreed to arbitrate his discrimination claim.
 {¶ 21} A review of the form indicates that the submission form states, "The undersigned parties hereby submit the present matter in controversy, as set forth in the attached statement of claim * * * and all related counterclaims * * * to arbitration * * *." (Emphasis added). This wording alone clearly shows Cercone was consenting to arbitration before the NASD only for that proceeding and not future proceedings. It is undisputed that Cercone's counterclaim was never decided by the NASD because the NASD dismissed the case and the parties failed to reopen the arbitration prior to the NASD deadline.
 {¶ 22} Moreover, if the parties desired to again pursue arbitration before the NASD, they have to file a new statement of claim, submission agreement, and pay another filing fee. Therefore, the NASD treats the refiled claim as a new claim. The NASD specifically *Page 10 
advised the parties in its April 28, 2006 letter, that "if this case has not settled or should not have been withdrawn, please notify this office by May 8, 2006. After May 8, 2006 has elapsed, NASD Dispute Resolutionwill not reopen this case." (Emphasis added).
 {¶ 23} Similarly, this court has held "the vacation of an arbitration award on procedural grounds leaves the parties as they were at the beginning of the process, and they are entitled to begin anew."[8]
 {¶ 24} Although the instant case concerns a dismissal of an arbitration and not a vacating of the case, we conclude the same principle applies.
 Waiver {¶ 25} We also do not agree with Merrill Lynch's argument that Cercone waived his right to bring his claim in the state court by consenting to the first arbitration.
 {¶ 26} As we held above, Cercone's consent to arbitration only applied to that proceeding and not to future proceedings. The cases cited to by Merrill Lynch in support of its waiver argument are distinguishable.[9] They concern situations where the parties entered into a binding agreement to arbitrate and then tried to back out of the agreement while that *Page 11 
case was pending before the arbitrator. None of the cases address the issue before us. That is, whether the agreement to arbitrate, when the arbitration is dismissed, prevents one of the parties from pursuing a claim in court. We certainly agree that if the arbitration is still pending, the party cannot change their legal remedy midstream.
 {¶ 27} Merrill Lynch also contends that the Federal Arbitration Act requires Cercone's claim to be arbitrated. We agree that federal law, and indeed Ohio law, favors arbitration to settle disputes.[10]
However, even though policy favors arbitration, a party cannot be required to submit to arbitration absent an agreement to do so.[11] In the absence of an agreement to arbitrate, this preference is irrelevant.
 {¶ 28} Although Merrill Lynch contends an agreement to arbitrate was set forth in its letter of April 21, 2006, which stated that in the event the parties did not settle "and the action needs to be re-filed, both parties agree that they will not assert a statute of limitations defense or other defense based upon the dismissal of the case." We conclude this language did not obligate Cercone to submit his claim to the NASD. It merely restricts him from raising certain defenses if the claim was refiled before the NASD. Accordingly, Cercone's assigned error is sustained.
 {¶ 29} Judgment reversed and remanded for further proceedings.
 {¶ 30} This cause is reversed. *Page 12 
It is, therefore, considered that said appellant recover of said appellee his costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, A.J., and MARY J. BOYLE, J., CONCUR
[1] We realize the NASD has recently changed its name to "Financial Industry Regulatory Authority" or "FINRA." However, for purposes of this appeal, we will continue to refer to the agency as the NASD.
[2] Merrill Lynch also filed a motion with the NASD requesting the prior dismissed proceeding be re-opened. Merrill Lynch requested NASD defer ruling on the request until its motion to dismiss in the state court was resolved.
[3] Journal Entry, February 16, 2007.
[4] 117 Ohio St.3d 3352, 2008-Ohio-938.
[5] Vanyo v. Clear Channel Worldwide, 156 Ohio App.3d 706;2004-Ohio-1793.
[6] U-4 Form at page 4.
[7] SEC Release No. 34-40109 (June 29, 1998), 63 Fed. Reg. 35299.
[8] Bordonaro v. Merrill Lynch, Pierce, Fenner Smith, 163 Ohio App.3d. 410, 2005-Ohio-4988, citing to Lockhart v. American Reserve Ins.Co. (1981), 2 Ohio App.3d 99.
[9] Taft v. McDowell Wellman Engg Co. (Aug. 9, 1979), Cuyahoga App. No. 39025; Rosser v. Hochwalt (1967), 12 Ohio App.2 129, 131; SandsBrothers Co. v. Zipper (S.D.N.Y., Oct. 27, 2003), U.S. Dist. No. 03 CIV 7731; DeAcero v. Core Furnace Systems Corp (W.D. PA, 2005), 403 F.Supp.2d 405, 410; Morgan Stanley DW, Inc. v. Anderson (Mar. 2, 2005), NASD Case No. 03-02090.
[10] ABM Farms Inc. v. Woods, 81 Ohio St.3d 498, 500,1998-Ohio-612.
[11] AT T Technologies. v. Communications Workers of Am. (1986), 475 U.S. 643, 648, 89 L.Ed.2d 648, 106 S.Ct. 1415. *Page 1