# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

No. 04-3073

RICHARD DISHER, individually and
on behalf of all others similarly situated,

*Plaintiff-Appellee,*

*v.*

CITIGROUP GLOBAL MARKETS
INCORPORATED,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Illinois.
No. 04 C 308—**G. Patrick Murphy**, *Chief Judge.*

_____

ARGUED MARCH 30, 2005—DECIDED AUGUST 17, 2005

_____

Before BAUER, RIPPLE and KANNE, *Circuit Judges.*

RIPPLE, *Circuit Judge.* On March 22, 2004, Richard Disher filed this action as a state-law putative class action against Citigroup Global Markets Incorporated, formerly known as Salomon Smith Barney ("SSB" or "Smith Barney"). SSB timely removed the case to the district court on the basis of federal question jurisdiction, *see* 28 U.S.C. § 1331; diversity

of citizenship jurisdiction, *see id.* § 1332; jurisdiction related to bankruptcy proceedings, *see id.* § 1334(b); and preemption under the Securities Litigation Uniform Standards Act ("SLUSA"), *see* 15 U.S.C. § 78bb(f). On Mr. Disher's motion, the district court remanded the case to state court. For the reasons set forth in the following opinion, we now reverse the judgment of the district court and remand the case for further proceedings.

# I

# BACKGROUND

## A. State-Law Suit

Mr. Disher was a customer of SSB, which operated as a full-service securities firm. He purchased shares of MCI WorldCom Incorporated between April 16, 1998, and March 5, 1999. He also purchased shares of Rhythms Netconnections Inc. on August 11, 1999. As part of its services for its customers, SSB issued investment research reports and ratings on a stock's future performance. The subject of Mr. Disher's complaint included unspecified stocks researched and rated by SSB's Internet and Telecommunications research groups.

SSB represented that its reports employed a five-point rating system: "buy," "outperform," "neutral," "underperform" and "sell." R.2 at 3. Mr. Disher's complaint alleged that "no later than March 2000," SSB "secretly abandoned its published five-point rating system and instead utilized a *de facto* three-point system ('buy,' 'outperform,' and 'neutral')." *Id.* at 5. Specifically, a neutral recommendation allegedly was a coded message from SSB to certain institutional customers to sell a security. Also, instead of assigning an underperform or sell rating for a particular stock, SSB

allegedly would stop covering that stock, with no public announcement or explanation. Thus, the complaint alleged, SSB's research ratings did not reflect its actual beliefs concerning the future performance of a stock.

The gravamen of the complaint was that SSB's misleading ratings induced Mr. Disher and class members to continue holding their securities in reliance on SSB's positive ratings when SSB's analysts no longer believed that such ratings were warranted. In addition, SSB also allegedly used its research reports, ratings and recommendations of certain stock to attract new, and to retain current, investment banking clients "by agreeing to issue a research rating for [those clients'] stock more favorably than Smith Barney's research warranted." *Id.* at 6.

Mr. Disher defined the putative class to include himself and "all customers of Smith Barney who held one or more of the Internet or Telecom Stocks in their Smith Barney accounts at times when those stocks were declining in value and when Smith Barney was rating those stocks as 'buy' 'outperform' or 'neutral' when such ratings were not warranted by Smith Barney's research." *Id.* at 8. The complaint specifically excluded "any claims based on Smith Barney's conduct in connection with Plaintiff's or any Class member's *purchases or sales* of any of the Internet Stocks or Telecom Stocks." *Id.* (emphasis added).

## B. District Court Proceedings

SLUSA provides for the removal to federal court of certain class actions based on state law in which the plaintiffs allege "a misrepresentation or omission of a material fact *in connection with the purchase or sale* of a covered security." 15 U.S.C. § 78bb(f) (emphasis added). The district court ruled that SLUSA did not apply in this case because the alleged

misconduct was not connected sufficiently to any purchase or sale of stock. Rather, the complaint alleged harm solely from the *retention* of securities in reliance on SSB's misleading research reports and ratings. The district court also concluded that there was no basis for removal under the general removal statute, 28 U.S.C. § 1441.

## II

## DISCUSSION

### A. Standard of Review

A district court's decision regarding the propriety of removal is a question of federal jurisdiction that we review de novo. *Boyd v. Phoenix Funding Corp.*, 366 F.3d 524, 529 (7th Cir. 2004). We also apply de novo review to the district court's interpretation of SLUSA. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 326 (7th Cir. 1995).

### B. Removal and Preemption under SLUSA

On appeal, SSB challenges the district court's conclusion that Mr. Disher's action did not fall within SLUSA's preemptive scope.[1]

---

[1] Because, for the reasons we shall discuss in this opinion, we hold that Mr. Disher's cause of action is subject to removal and preemption under SLUSA, we have no occasion to address whether we have jurisdiction to review the district court's remand order, or to evaluate the merits of that order, with respect to the absence or presence of federal jurisdiction on any basis other than SLUSA.

**1.**

As a threshold matter, Mr. Disher contends that we lack appellate jurisdiction over this matter because the district court remanded the case for lack of subject matter jurisdiction. *See* 28 U.S.C. § 1447(d). This court already has determined that a district court's remand of a case to state court based on SLUSA is appealable. *See Kircher v. Putnam Funds Trust* ("*Kircher I*"), 373 F.3d 847 (7th Cir. 2004). The substance of Mr. Disher's submissions in this case were addressed in *Kircher I*, and we decline to revisit this court's decision.

**2.**

SLUSA is the most recent in a line of federal securities statutes that originated with the enactment of the Securities Act of 1933 ("1933 Act"), 15 U.S.C. § 77a et seq., and the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. § 78a et seq. *See Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 292 F.3d 1334, 1340 (11th Cir.), *cert. denied*, 537 U.S. 950 (2002). Section 10(b) of the 1934 Act made it "unlawful for any person . . . [t]o use or employ, *in connection with the purchase or sale of any security* registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities Exchange Commission ('SEC')] may prescribe." 15 U.S.C. § 78j(2)(b) (emphasis added). The SEC then promulgated Rule 10b-5, which provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, *in connection with the purchase or sale of any security*.

17 C.F.R. § 240.10b-5 (emphasis added). In 1995, Congress enacted the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §§ 77z-1, 78u, to protect against merit- less shareholder suits that were being initiated for the sole purpose of obtaining large attorneys' fees through private settlements. *See Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 332 F.3d 116, 122 (2d Cir. 2003). To achieve this aim, the PSLRA imposed heightened pleading standards and mandatory stays of discovery for securities fraud class actions filed in federal court. *Id.*

After the enactment of the PSLRA, plaintiffs increasingly began to file suits in state courts under state securities law. *Id.* at 123. Congress responded by enacting SLUSA. *Kircher v. Putnam Funds Trust* ("*Kircher II*"), 403 F.3d 478, 482 (7th Cir. 2005) ("SLUSA is designed to prevent plaintiffs from migrating to state court in order to evade rules for federal securities litigation in the [PSLRA]."). SLUSA attempts to close this " 'federal flight' loophole" by making federal courts the exclusive forum for class actions alleging fraud in the sale or purchase of covered securities and by mandating that federal law governs such class actions. *Spielman*, 332 F.3d at 123. To that end, SLUSA contains the following preemption and removal provisions:

(1) Class action limitations

> No covered class action[2] based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—
>
>> (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; [3] or

---

[2] SLUSA defines the term "covered class action" as

(i) any single lawsuit in which—

(I) damages are sought on behalf of more than 50 persons or prospective class members, and questions of law or fact common to those persons or members of the prospective class, without reference to issues of individualized reliance on an alleged misstatement or omission, predominate over any questions affecting only individual persons or members; or

(II) one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members; or

(ii) any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which—

(I) damages are sought on behalf of more than 50 persons; and

(II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose.

15 U.S.C. § 78bb(f)(5)(B).

[3] SLUSA defines the term "covered security" as

a security that satisfies the standards for a covered security

(continued...)

>    (B) that the defendant used or employed any
>    manipulative or deceptive device or contrivance
>    in connection with the purchase or sale of a
>    covered security.

> (2) Removal of covered class actions

>    Any covered class action brought in any State court
>    involving a covered security, as set forth in para-
>    graph (1), shall be removable to the Federal district
>    court for the district in which the action is pending,
>    and shall be subject to paragraph (1).

15 U.S.C. § 78bb(f)(1)-(2).[4]


### 3.

A defendant may remove a case to federal court only if the federal district court would have original subject matter jurisdiction over the action. 28 U.S.C. § 1441; *Caterpillar Inc.*

---

(...continued)

>    specified in paragraph (1) or (2) of section 18(b) of the
>    Securities Act of 1933 [15 U.S.C. § 77r(b)], at the time during
>    which it is alleged that the misrepresentation, omission, or
>    manipulative or deceptive conduct occurred . . . .

15 U.S.C. § 78bb(f)(5)(E). Section 77r(b)(2), in turn, states:

>    A security is a covered security if such security is a security
>    issued by an investment company that is registered, or that
>    has filed a registration statement, under the Investment
>    Company Act of 1940.

15 U.S.C. § 77r(b)(2).

[4] SLUSA amended both the 1933 Act, *see* 15 U.S.C. § 77p, and the 1934 Act, *see id.* § 78bb(f). The amendments are functionally identical; for ease of reference, we shall cite only the 1934 Act codification.

*v. Williams*, 482 U.S. 386, 392 (1987). The party seeking removal has the burden of establishing federal jurisdiction. *Boyd*, 366 F.3d at 529. As a general rule, the plaintiff is the master of his own complaint and can avoid federal question jurisdiction by pleading exclusively state-law claims. *Bastien v. AT&T Wireless Servs., Inc.*, 205 F.3d 983, 986 (7th Cir. 2000) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 10 (1983)). Ordinarily, when a claim arises under state law, the assertion of federal preemption as a defense will not create federal jurisdiction. *Id.*

"Congress has, however, created certain exceptions to" the well-pleaded complaint rule. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). The Supreme Court has declared that "a state claim may be removed to federal court in only two circumstances—when Congress expressly so provides . . . or when a federal statute wholly displaces the state-law cause of action through complete pre-emption." *Id.* at 8. SLUSA expressly provides for the removal to federal court of covered fraud claims that are "in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(2).

SLUSA does not, however, preclude all securities fraud actions based on state law. To invoke SLUSA, the removing party must show: (1) that the action is a "covered class action" for purposes of SLUSA; (2) that the action purports to be based on state law; (3) that the defendant is alleged to have misrepresented or omitted a material fact (or to have employed a manipulative device or contrivance); and (4) that the defendant's alleged conduct was "in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1)-(2); *Green v. Ameritrade, Inc.*, 279 F.3d 590, 596 (8th Cir. 2002). The primary issue in this case concerns whether or not Mr. Disher's state-law class action complaint alleged misrepresentations that were "in connection with

the purchase or sale" of securities. Mr. Disher contends that this action falls outside the scope of SLUSA because the complaint alleges that SSB's misrepresentations caused him and other class members to *hold* securities, not to purchase or sell them. Moreover, the complaint specifically disavows any claim related to the purchase or sale of stock.

SLUSA does not define "in connection with the purchase or sale of a covered security." The Supreme Court has not yet had occasion to consider this phrase in the context of SLUSA. For guidance, then, this court and other courts of appeals have relied on Supreme Court case law construing the identical phrase in the context of section 10(b) of the 1934 Act and Rule 10b-5. *See Kircher II*, 403 F.3d at 482-84 (collecting cases). The analogy to section 10(b) and Rule 10b-5 is appropriate because, in enacting SLUSA, Congress "was using language that, at the time of SLUSA's enactment, had acquired settled, and widely-acknowledged, meaning in the field of securities law, through years of judicial construction in the context of § 10b-5 lawsuits." *Riley*, 292 F.3d at 1342-43. Analogizing to the case law interpreting section 10(b) also makes sense, in terms of our obligation to interpret the statute so as to give effect to the intent of Congress, because "SLUSA can do its job only if subsection (b) covers those claims that engage Rule 10b-5 (and thus come within the 1995 statute) if presented directly under federal law." *Kircher II*, 403 F.3d at 482.

The Supreme Court has limited the universe of investors who may bring private securities fraud actions under the statute. In *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975), the Court held that investors who neither purchase nor sell securities have no standing to maintain private litigation to recover damages under section 10(b) and Rule 10b-5, even if the failure to purchase or sell was the result of fraud. Mr. Disher submits that, under *Blue Chip*

*Stamps*, because claims related solely to the *retention* of securities, as opposed to a purchase or sale, are not cognizable under section 10(b), such claims also are not preempted by SLUSA. This position has the support of some of our sister courts of appeals. *See Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25, 43 (2d Cir. 2005) ("[I]n enacting SLUSA Congress sought only to ensure that class actions brought by plaintiffs who satisfy the *Blue Chip* purchaser-seller rule are subject to the federal securities laws."); *Green*, 279 F.3d at 598; *Riley*, 292 F.3d at 1345.

However, this court recently has concluded that SLUSA's "in connection with the purchase or sale of a covered security" requirement does not incorporate the *Blue Chip Stamps* standing rule. *See Kircher II*, 403 F. 3d at 483-84. Our opinion in *Kircher II* was issued after the district court's decision in this case and, indeed, after briefing and oral arguments on appeal. In *Kircher II*, one of the plaintiffs' classes was defined as all investors who held the defendant mutual fund's securities during a defined period and did not purchase or sell shares during that period. *See id.* at 483. We held that the claims were "connected to their own purchase of securities" and thus were blocked by SLUSA. We explained:

> Decisions since *Blue Chip Stamps* reiterate that it deals with private actions alone and does not restrict coverage of the statute and regulation. *See United States v. O'Hagan*, 521 U.S. 642, 664, 117 S. Ct. 2199, 138 L.Ed.2d 724 (1997); *Holmes v. SIPC*, 503 U.S. 258, 284, 112 S. Ct. 1311, 117 L.Ed.2d 532 (1992); *United States v. Naftalin*, 441 U.S. 768, 774 n.6, 99 S. Ct. 2077, 60 L.Ed.2d 624 (1979). By depicting their classes as containing entirely non-traders, plaintiffs do not take their claims outside § 10(b) and Rule 10b-5; instead they demonstrate only that the claims must be left to public enforcement. It

would be more than a little strange if the Supreme Court's decision to block private litigation by non-traders became the opening by which that very litigation could be pursued under state law, despite the judgment of Congress (reflected in SLUSA) that securities class actions must proceed under federal securities law or not at all. *Blue Chip Stamps* combined with SLUSA may mean that claims of the sort plaintiffs want to pursue must be litigated as derivative actions or committed to public prosecutors, but this is not a good reason to undercut the statutory language.

*Kircher II*, 403 F.3d at 483-84. Mr. Disher's class definition of all SSB customers who *retained* certain securities in reliance on SSB's misrepresentations is no more narrowly drawn than the class definitions discussed in *Kircher II*. Thus, we must conclude that the present claims are connected sufficiently to the purchase and sale of a covered security for the purposes of SLUSA preemption and removal.

## Conclusion

Accordingly, we reverse the judgment of the district court and remand with instructions to vacate the remand order and to dismiss Mr. Disher's claims. SSB may recover its costs on this appeal.

REVERSED and REMANDED

A true Copy:

      Teste:


                                  _____
                                  *Clerk of the United States Court of*
                                  *Appeals for the Seventh Circuit*