**Robert L. HAHN, Plaintiff,**

v.

**Daniel J. RAUCH, et al., Defendants.**

**Case No. 5:08CV1204.**

United States District Court,
N.D. Ohio,
Eastern Division.

Aug. 15, 2008.

---

Natalie F. Grubb, John Stephan Lobur, Grubb & Associates, Medina, OH, for Plaintiff.

Ronald G. Macala, Timothy Paul Piatt, Timothy R. Piatt, Macala, Gore & Piatt, Canton, OH, for Defendants.

## MEMORANDUM OPINION AND ORDER

SARA LIOI, District Judge.

This case is before the Court on a motion to remand based upon lack of subject matter jurisdiction filed by the plaintiff Robert L. Hahn ("Hahn" or "Plaintiff"), and a motion for default judgment filed by the counterclaimants based upon Plaintiff's failure to file a timely answer. For the reasons that follow, the Court finds that it lacks subject matter jurisdiction because the defendants fail to establish that Plaintiff's claims are completely preempted. Accordingly, the Court grants the motion to remand and, consequently, declines to rule on the motion for default judgment.

## I. Factual and Procedural Background

On April 21, 2008, Plaintiff filed this action in the Summit County, Ohio Common Pleas Court (Doc. No. 1–2) (the "Complaint"). In the Complaint, Plaintiff asserts causes of action for slander, libel, and tortious interference with business relationship.

On May 14, 2008, defendants Daniel J. Rauch ("Rauch"), Operative Plasters' and Cement Masons' International Association Local Union 109 (the "Local"), Operative Plasters' and Cement Masons' International Association Local Union 109 Apprenticeship Fund, (the "Fund"), and Operative Plasters' and Cement Masons' International Association (the "Union"), (collectively, "Defendants"), removed this action to federal court on the basis of federal question jurisdiction. (Doc. No. 1.) On June 4, 2008, Defendants filed an answer, and Rauch and the Fund filed a counterclaim, asserting that Hahn breached the fiduciary duty imposed upon him by Section 404(a) of ERISA, 29 U.S.C. § 1104, and engaged in transactions prohibited by Section 406 of ERISA, 29 U.S.C. § 1106. (Doc. No. 6.)

Plaintiff served as the Business Manager and Financial Secretary of the Local from January 1, 2001, to May 23, 2007. (Compl. ¶ 10.) During the same time period, Plaintiff also served as the Trustee, Coordinator, and Secretary Treasurer of the Fund. (Id. ¶ 11.) Plaintiff alleges that on May 22, 2007, Rauch, the International Representative of the Union, wrote a letter to the Union's General President, Patrick Finley, indicating that Plaintiff's driver's license had been revoked after Plaintiff was involved in a traffic accident on May 20, 2007. (Id. ¶ 12.) In the same letter, Rauch also allegedly accused Plaintiff of being responsible for thousands of dollars of unaccounted-for expenditures by the Fund and the Local. (Id. ¶ 13.) According to Plaintiff, on May 23, 2007, the Local submitted the statements contained in Rauch's letter to all of its officers. (Id. ¶ 14.) That same day, Plaintiff was suspended from employment, effectively ending contributions to Plaintiff's health and welfare fund, pension plans, and annuity. (Id. ¶ 15.) On June 21, 2008, Finley commissioned a hearing, during which a report based on Rauch's letter was made. (Id. ¶ 16.) Plaintiff was terminated on July 20, 2007. (Id. ¶ 17.)

In Count I, Plaintiff claims he was slandered by Rauch, whom Plaintiff asserts "wrongfully accus[ed] Plaintiff and submit[ed] false statements to [...] Plaintiff's employer, Local 109." (*Id.* ¶ 20.) Plaintiff contends that Rauch submitted the allegedly false statements intentionally and maliciously, and did so without ascertaining the truth or veracity of the statements. (*Id.* ¶ 21.) Count II accuses Rauch of libeling Plaintiff by "wrongly printing and publishing false and misleading statements." (*Id.* ¶ 25.) Count II further alleges that Defendants libeled Plaintiff by publishing Rauch's false statements to a third party (presumably by submitting the statements to the Local's officers on May 23, 2007.) Finally, in Count III, labeled "Tortious Interference with Business Relationship," Plaintiff accuses Defendants of tortiously interfering with his employment relationship, alleging that his termination "was a direct and proximate result of the Defendants' intentional contact with the employer." (*Id.* ¶ 36.)

In the notice of removal, Defendants asserted that resolution of Plaintiff's claims requires interpretation of the Union's constitution, the constitution and by-laws of the Local, and the rules and regulations of ERISA applicable to the Fund. (Notice of Removal, ¶ 3.) Defendants assert that Plaintiff's complaint therefore is completely preempted by section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a) ("Section 301"). (*Id.*)

Plaintiff moved to remand (Doc. No. 5), arguing that Defendants failed to establish complete preemption, and therefore the Court lacks subject matter jurisdiction. In their opposition to the motion to remand (Doc. No. 7), Defendants added to their preemption argument, asserting that, in addition to LMRA preemption, Plaintiff's complaint also is preempted by Section 2(9) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 152(9), the Labor Management Reporting and Disclosure Act ("LMRDA"), and ERISA. Plaintiff filed a reply. (Doc. No. 11.) [1]

In the interim, on June 27, 2008, Rauch and the Fund filed a motion seeking entry of default and default judgment on their counterclaims based upon Plaintiff's failure to respond. (Doc. No. 8.) Later the same day, Plaintiff filed a brief in opposition to the motion for default judgment (Doc. No. 9), and an answer to the counterclaims. (Doc. No. 10.) Because the motion to remand implicates this Court's subject matter jurisdiction, that motion is addressed first.

## II. Law and Analysis

### A. Motion to Remand

#### 1. Standard of Review

■ A defendant may remove to federal court only state court actions that originally could have been filed in federal court. *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). As a court of limited jurisdiction, a federal district court must proceed cautiously in determining that it has subject matter jurisdiction. *Musson Theatrical, Inc. v. Fed. Express Corp.,* 89 F.3d

---

1. Defendants moved to strike Plaintiff's reply on the ground that it did nothing but rehash arguments set forth in Plaintiffs' original motion to remand. While Defendants' argument is in some sense meritorious—Plaintiff's reply is, in essence, a repetition of prior arguments—it goes to the weight to be accorded the brief, not Plaintiff's ability to file it in the first place. The Court is well-equipped to determine for itself whether or not Plaintiff's reply brief holds any persuasive value. Likewise, the Court has little difficulty recognizing Defendants' motion to strike for what it really is—a thinly disguised effort to have the last word on the subject of remand. Defendants' motion to strike is DENIED.

1244, 1252 (6th Cir.1996). The court must give "due regard" to the power reserved to the states under the Constitution to provide for the determination of controversies in the state courts. *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108–09, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). Accordingly, removal statutes must be construed strictly to promote comity and preserve jurisdictional boundaries between state and federal courts. *Alexander v. Elec. Data Sys. Corp.,* 13 F.3d 940, 949 (6th Cir.1994). "[A]ll doubts as to the propriety of removal are resolved in favor of remand." *Coyne v. Am. Tobacco Co.,* 183 F.3d 488, 493 (6th Cir.1999). The defendant seeking removal bears the burden of proving the court's jurisdiction. *See Rogers v. Wal–Mart Stores, Inc.,* 230 F.3d 868, 871 (6th Cir.2000).

### 2. Federal Question Jurisdiction

The parties agree that diversity is incomplete, and therefore cannot provide a basis for jurisdiction. Accordingly, this Court has jurisdiction over this case, if at all, based upon the presence of a federal question. The district court has federal question jurisdiction in cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Ordinarily, the "well-pleaded complaint" rule governs the presence or absence of federal question jurisdiction. *Caterpillar,* 482 U.S. at 392, 107 S.Ct. 2425. Federal question jurisdiction "extends over 'only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law,' in that 'federal law is a necessary element of one of the well pleaded ... claims.'" *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 808, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (quoting *Franchise Tax Bd. of State of*

*Cal. v. Constr. Laborers Vacation Trust for S. Cal.,* 463 U.S. 1, 13, 27–28, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)).

"[S]tate courts are generally presumed competent to interpret and apply federal law." *Mikulski v. Centerior Energy Corp.,* 501 F.3d 555, 560 (6th Cir. 2007) (citing *Zwickler v. Koota,* 389 U.S. 241, 245, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967)). The plaintiff is the master of his claim, and may avoid federal jurisdiction by relying exclusively on state law. *Beneficial Nat'l Bank v. Anderson,* 539 U.S. 1, 12, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003) (citing *Caterpillar,* 482 U.S. at 392, 107 S.Ct. 2425). "In particular, the existence of a federal defense normally does not create statutory 'arising under' jurisdiction, *Louisville & Nashville R.R. Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908), and 'a defendant may not [generally] remove a case to federal court unless the *plaintiff's* complaint establishes that the case 'arises under' federal law,' *Franchise Tax Bd.,* 463 U.S. at 10, 103 S.Ct. 2841." *Aetna Health Inc. v. Davila,* 542 U.S. 200, 207, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004).

An exception to the well-pleaded complaint rule exists, and a state law claim may be removed to federal court "when a federal statute wholly displaces the state-law cause of action through complete preemption." *Beneficial,* 539 U.S. at 8, 123 S.Ct. 2058. "When the federal statute completely pre-empts the state law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Id.* The Sixth Circuit has noted, however, "that 'complete preemption'—no matter how powerful when properly present in a case—is of very limited application: it is a very limited exception to the well-pleaded complaint rule." *Pal-*

*kow v. CSX Transp., Inc.*, 431 F.3d 543, 553 (6th Cir.2005).

### a. LMRA Preemption

■ Because the face of Plaintiff's Complaint does not state a federal claim, Defendants bear the burden of establishing complete preemption. Defendants assert that Plaintiff's Complaint is completely preempted by LMRA Section 301, which provides:

Suits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined ,in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

■ The Supreme Court has explained that "[t]he subject matter of § 301(a) 'is peculiarly one that calls for uniform law.' [* * *] The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements." *Local 174, Teamsters, Chauffeurs, Warehousemen and Helpers of Am. v. Lucas Flour Co.*, 369 U.S. 95, 103, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962) (quotations omitted). "The interests in interpretive uniformity and predictability that require that labor-contract disputes be resolved by reference to federal law also require that the meaning given a contract phrase or term be subject to uniform federal interpretation." *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 211, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985).

■ The preemptive effect of Section 301 "is so powerful as to displace entirely any state cause of action" for violation of a collective bargaining agreement. *Franchise Tax Board*, 463 U.S. at 23, 103 S.Ct. 2841. The Supreme Court has made clear that LMRA preemption applies not only to contract claims, but also to torts:

[Q]uestions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort.

*Allis–Chalmers*, 471 U.S. at 217, 105 S.Ct. 1904. However, not all tort claims relating to employment are preempted. Tort claims that are "independent" of the collective bargaining agreement are not subject to preemption. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 409–10, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). "[I]t would be inconsistent with congressional intent to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Allis–Chalmers*, 471 U.S. at 212, 105 S.Ct. 1904.

■ The Sixth Circuit employs a two-part test to determine whether a state law claim is sufficiently "independent" to withstand Section 301 preemption:

First, courts ·must determine whether resolving the state-law claim would require interpretation of the terms of the collective bargaining agreement. If so, the claim is preempted. Second, courts must ascertain whether the rights claimed by the plaintiff were created by the collective bargaining agreement, or instead by state law. If the rights were created by the collective bargaining agreement, the claim is preempted. In·

short, if a state-law claim fails either of these two requirements, it is preempted by § 301.

*Mattis v. Massman,* 355 F.3d 902, 906 (6th Cir.2004) (citing *DeCoe v. Gen. Motors Corp.,* 32 F.3d 212, 216 (6th Cir.1994)). "If the plaintiff can prove all of the elements of his claim without the necessity of contract interpretation, then his claim is independent of the labor agreement." *DeCoe,* 32 F.3d at 216 (citing *Dougherty v. Parsec, Inc.,* 872 F.2d 766, 770 (6th Cir.1989)). "[N]either a tangential relationship to the CBA, nor the defendant's assertion of the contract as an affirmative defense will turn an otherwise independent claim into a claim dependent on the labor contract." *Id.,* (citing *Fox v. Parker Hannifin Corp.,* 914 F.2d 795, 800 (6th Cir.1990)). "[M]erely consulting a CBA in the course of adjudicating state law claims is not enough." *Valinski v. Detroit Edison,* 197 Fed.Appx. 403, 409 (6th Cir.2006) (citing *Livadas v. Bradshaw,* 512 U.S. 107, 124, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994)). Only where disposition of the state law claim is "substantially dependent upon," or "inextricably intertwined with" analysis of the terms of the collective bargaining agreement is the claim preempted. *Allis–Chalmers,* 471 U.S. at 213, 220, 105 S.Ct. 1904.

■■■■ This case indisputably does not involve interpretation of a collective bargaining agreement. Defendants nevertheless assert that LMRA preemption applies because the case calls for interpretation of one or more union constitutions.[2] The Supreme Court has extended LMRA § 301 to intra-union agreements, including union constitutions, *United Ass'n of Journeymen*

*v. Local 334,* 452 U.S. 615, 627, 101 S.Ct. 2546, 69 L.Ed.2d 280 (1981), and an individual union member may bring suit under § 301 against a union to enforce a union constitution. *Wooddell v. Int'l Bhd. of Elec. Workers,* 502 U.S. 93, 99, 112 S.Ct. 494, 116 L.Ed.2d 419 (1991). However, "[n]either *United Ass'n of Journeymen* nor *Wooddell* are removal cases, nor does either raise an issue of preemption nor state that § 301 gives the federal courts *exclusive* jurisdiction over suits to enforce union constitutions." *Tisdale v. United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus. of the U.S. & Canada, Local 704,* 25 F.3d 1308, 1310 (6th Cir.1994).[3] "[P]reemption and removal are related but distinct concepts. Even '[t]he fact that a defendant might ultimately prove that a plaintiff's claims are preempted ... does not establish that they are removable to federal courts.'" *Id.* at 1311 (quoting *Caterpillar,* 482 U.S. at 398, 107 S.Ct. 2425). "[W]here a suit does not center on the terms of a labor contract (collective bargaining agreement, union constitution, or other) it is not preempted because it is not within the arena of labor relations which Congress has nationalized." *Id.* at 1310–11.

In this case, Plaintiff's complaint states only claims for defamation and intentional interference with business relations under state law. Plaintiff alleges that he was an employee of the Local, and was discharged by the Local due to Defendants' intentional interference with his employment relationship. Plaintiff further complains that he was defamed by certain allegedly defamatory statements published by Defendants. The complaint does not invoke any federally-created rights, and therefore un-

---

**2.** The Union and the Local each have separate constitutions.

**3.** In light of this statement in *Tisdale,* it is questionable whether the Sixth Circuit recognizes LMRA *complete* preemption (as opposed to ordinary preemption) based upon a union constitution.

questionably fails the second prong of the *DeCoe* preemption analysis. Accordingly, removal was proper, and this Court has subject matter jurisdiction only if Defendants meet their burden of proving that resolution of Plaintiff's state law claims is "substantially dependent upon," or "inextricably intertwined with" analysis of the terms of the union constitution. *Allis–Chalmers,* 471 U.S. at 213, 220, 105 S.Ct. 1904.

■■■■■ Plaintiff's complaint contains claims for both slander and libel, which are types of defamation. "Defamation is the unprivileged publication of a false and defamatory matter about another." *McCartney v. Oblates of St. Francis deSales,* 80 Ohio App.3d 345, 353, 609 N.E.2d 216 (6th Dist.1992) (citation omitted). "A defamatory statement is one which tends to cause injury to a person's reputation or exposes him to public hatred, contempt, ridicule, shame or disgrace or affects him adversely in his trade or business." *Id.* (citation omitted). To succeed on a defamation claim, the plaintiff must prove: (1) a false statement, (2) about the plaintiff, (3) was published without privilege to a third party, (4) with fault of at least negligence on the part of the defendant, and (5) the statement was either defamatory per se or caused special harm to the plaintiff. *Gosden v. Louis,* 116 Ohio App.3d 195, 206, 687 N.E.2d 481 (9th Dist.1996). In Count III, Plaintiff asserts a claim for tortious interference with business relationship, which requires proof of (1) a contractual or business relationship; (2) knowledge of the

relationship by the tortfeasor; (3) an intentional and improper act by the tortfeasor terminating a business relationship; (4) the lack of privilege on the part of the tortfeasor; and (5) resulting damages. *Brookeside Ambulance, Inc. v. Walker Ambulance Serv.,* 112 Ohio App.3d 150, 155–56, 678 N.E.2d 248 (6th Dist.1996).

Defendants maintain that Plaintiff's defamation and tortious interference claims all are preempted by the LMRA, but do not differentiate their arguments in this regard. Defendants make what appear to be three arguments in favor of LMRA preemption, all of which are rather vague.[4]

First, Defendants claim that analysis of the Union constitution is necessary ·because Plaintiff was suspended and terminated from his position after Union General President Finley imposed a trusteeship on the Local, and the hearing at which Plaintiff claims he was libeled "was commissioned by General President Finley pursuant to the terms of the International's Constitution." Defendants include a citation to Article 13 of the Union constitution, but do not cite any specific language from the Union constitution, nor explain why or how interpretation is necessary to resolve Plaintiff's claims. Article 13 provides that the General President may appoint a trustee to run a local union upon receiving reports of misconduct. To appoint a trustee, the General President must set a hearing to determine whether such appointment is proper.

Plaintiff's claims do not attack the procedures by which Finley conducted the

---

4. In what, with an excess of generosity, possibly could be characterized as a fourth argument, Defendants state that "[s]ince Plaintiff's complaint challenges actions taken pursuant to [the Union constitution, which is a labor contract within the meaning of the LMRA], an evaluation of Plaintiff's claims is indeed inextricably intertwined with consideration of the terms of that document." (Defs.' Opp. to Pl.'s Mot. to Remand, at 10.) This is pure conclusion, without any facts, analysis, or supporting authority. Accordingly, the Court rejects this "argument" as insufficient to carry Defendants' burden of establishing subject matter jurisdiction, and finds that no further discussion of this argument is necessary (or even possible, given the lack of specificity).

hearing or appointed the trustee. Rather, Plaintiff complains of being defamed and tortiously injured by false statements made by Defendants at or during, among other things, the trusteeship hearing. Neither the propriety of the imposition of the trusteeship, nor whether the hearing was conducted in conformance with the constitution's provisions is at issue. Nowhere in the complaint does Plaintiff attack the appointment of the trustee, seek to have the trustee removed, or seek reinstatement to his position. Thus, the trusteeship provisions of the Union constitution have at best a tangential relationship to Plaintiff's state law causes of action. Accordingly, the Court perceives no reason why interpretation of the constitution's trusteeship provisions is required to resolve Plaintiff's claims.

Second, Defendants argue that interpretation of the Union constitution is necessary because "Rauch had a duty [ . . . ] to report [ . . . ] suspected financial misconduct by [Plaintiff]," and therefore, Plaintiff's claims "raise issues relating to privilege." This argument is highly conclusory. Defendants do not cite any language from the Union constitution they believe somehow creates a privilege relative to either the defamation or tortious interference claims. Defendants also fail to cite any case authority supporting complete preemption of such claims based upon the intertwining of privilege issues with a labor contract. Defendants do not even reference any Ohio state law to explain the circumstances under which such privileges might exist. Under the circumstances, Defendants fail to carry their burden of establishing that Plaintiff's claims are completely preempted. In any event, the absence of a privilege is just one of five elements of either a defamation or tortious interference cause of action. Based upon Defendants' unsupported and unexplained contention that Plaintiff's claims "raise issues relating to privilege[,]" where privilege is just one element of the claims at issue, it cannot be said that resolution of Plaintiff's complaint is "inextricably intertwined with" or "substantially dependent on" analysis of the Union constitution. *Allis–Chalmers*, 471 U.S. at 213, 220, 105 S.Ct. 1904. The Court finds the relationship between the Union constitution and Plaintiff's claims at best tangential, and therefore insufficient to establish complete preemption.

In their third and final argument, Defendants assert that interpretation of the Local's constitution is necessary because it required Plaintiff to possess a valid driver's license to maintain eligibility for office of Business Manager.[5] Plaintiff asserts that he was injured by false statements regarding the revocation of his driver's license. Here, again, Defendants do not cite any specific portion of the Local's constitution or explain what type of interpretation might be required. Whether or not the Local's constitution contained such a requirement (and there appears to be no dispute that it does), no actual *interpretation* of that document will be required. Proof of Plaintiff's claims does not require establishing that Defendants acted or failed to act in some way that was contrary to the Local's constitution vis-à-vis the driver's license provision. Thus, while Plaintiff's claims relate to allegedly false statements about the status of his driver's license, and the Local's constitution is the source of the driver's license requirement, the relationship between that requirement and Plaintiff's state law tort claims is at best tangential.

---

**5.** For purposes of this argument, the Court assumes without deciding that Defendants are correct in their (unsupported) assertion that a local union's constitution is a "labor contract" within the meaning of the LMRA.

Finding Defendants' arguments unpersuasive, the Court concludes that Plaintiff's complaint is not completely preempted by LMRA § 301.

### b. ERISA Preemption

■■■ The complete preemption exception to the well-pleaded complaint rule applies to claims arising under ERISA. *Metro. Life. Ins. Co. v. Taylor,* 481 U.S. 58, 64–67, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). "[S]tate common law claims for benefits under an employee benefit plan are preempted as long as the lawsuit relates to an employee benefit plan." *Wright v. Gen. Motors Corp.,* 262 F.3d 610, 613 (6th Cir.2001). "However, only if the claim is 'complete[ly] preempt[ed]' by ERISA, that is, when the action is to recover benefits, enforce rights or clarify future benefits under an ERISA plan, is the action subject to removal to the federal courts." *Id.* (citing *Warner v. Ford Motor Co.,* 46 F.3d 531, 534 (6th Cir.1995) (en banc)). "Removal and preemption are two distinct concepts." *Warner,* 46 F.3d at 535. "Simply because a claim is preempted by ERISA does not mean it is automatically removable." *Wright,* 262 F.3d at 613. "ERISA pre-emption, without more, does not convert a state claim into an action arising under federal law." *Metro. Life,* 481 U.S. at 64, 107 S.Ct. 1542. The claim only is removable if it is completely preempted. *Wright,* 262 F.3d at 614.

■■■ None of Defendants' preemption arguments address complete preemption under ERISA. Instead, Defendants argue for preemption based upon 29 U.S.C. § 1144. (Defs.' Opp'n to Mot. to Remand, at 11.) Defendants assert conclusorily that Plaintiff's claims "directly impact an ERISA fund which, in turn, gives rise to preemption under ERISA." (*Id.* at 7.) Defendants argue that their conduct "was done in an effort to maintain [the] fiscal integrity of the Fund[,]" and, "[c]onse-quently, any statements by the Fund regarding Plaintiff's breach of [his fiduciary] obligation surely 'relate to' and otherwise have a direct connection with the Fund." (*Id.* at 11.)

■■■ Assuming *arguendo* that the Fund is an employee benefit plan governed by ERISA, this argument, even if accepted, at best establishes ordinary, or conflict, preemption. It does not establish complete preemption under ERISA, and therefore does not establish federal subject matter jurisdiction. While ERISA may preempt state law claims that "relate to" an employee benefit plan, it does not "completely preempt" all such claims. "Thus, § 1144 preemption does not create a federal cause of action itself, and cannot convert a state cause of action into a federal cause of action under the well-pleaded complaint rule." *Warner,* 46 F.3d at 534; *see also Strong v. Telectronics Pacing Sys., Inc.,* 78 F.3d 256, 260 (6th Cir.1996) (§ 1132(a)(1)(B) completely preempts state law, while § 1144 does not).

■■■ "[I]n order to come within the exception [to the well-pleaded complaint] rule a court must conclude that the common law or statutory claim under state law should be characterized as a superseding ERISA action 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan,' as provided in § 1132(a)(1)(B)." *Wright,* 262 F.3d at 614 (citing *Warner,* 46 F.3d at 534) (quoting 29 U.S.C. § 1132(a)(1)(B)). That is, the claims must be the equivalent of a civil enforcement action under ERISA. *Id.* It is beyond cavil that Plaintiff's complaint, which relies exclusively on state common law and asserts claims for defamation and tortious interference, does not seek to enforce the terms of an employee benefit

plan and is not equivalent to an ERISA enforcement action. "Even if an action refers to a plan, [...] the action will not relate to the plan for preemption purposes when the action only peripherally affects the plan." *Crabbs v. Copperweld Tubing Prods. Co.*, 114 F.3d 85, 90 (6th Cir.1997) (internal quotation and citation omitted).

■ It is entirely possible that Plaintiff's complaint is subject to preemption under 29 U.S.C. § 1144(a). However, state courts are competent to determine whether ERISA preempts state law claims. *NGS Am., Inc. v. Jefferson*, 218 F.3d 519, 530 (6th Cir.2000). Because Plaintiff's complaint is not completely preempted, this Court lacks subject matter jurisdiction, and such determination must be left to the state court.

### c. NLRA Preemption

■ As a threshold matter, Defendants did not assert NLRA (or LMRDA) complete preemption in the notice of removal. These bases were raised for the first time in Defendants' opposition to the motion to remand. A defendant cannot argue a new substantive ground as a basis for removal in opposing remand.[6] *Uppal v. Elec. Data Sys.*, 316 F.Supp.2d 531, 535–36 (E.D.Mich.2004); *Schepis v. Local Union No. 17, United Bhd. of Carpenters and Joiners of Am.*, 989 F.Supp. 511, 516 (S.D.N.Y.1998); *Wyant v. Nat'l R.R. Passenger Corp.*, 881 F.Supp. 919, 924–25

(S.D.N.Y.1995). Accordingly, Defendants' arguments in this regard are waived. However, even if considered, these arguments lack merit.

■ "The Supreme Court has only found three statutes that evince [...] Congressional intent [to displace state law entirely]: § 301 of the LMRA, *see Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists*, 390 U.S. 557, 560, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968); § 502(a)(1)(B) of ERISA, see *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–66, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), and §§ 85 and 86 of the National Bank Act, *see Beneficial Nat'l Bank*, 539 U.S. at 10–11, 123 S.Ct. 2058." *AmSouth Bank v. Dale*, 386 F.3d 763, 776 (6th Cir.2004).[7] The NLRA is not one of them. "The fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted under the NLRA does *not* establish that they are removable to federal court." *Caterpillar*, 482 U.S. at 398, 107 S.Ct. 2425. Rather, the NLRA gives rise only to "'normal' [i.e., ordinary or conflict] preemption, rather than 'complete' preemption as Defendant instead insists." *Boggs v. Appalachian Reg'l Healthcare, Inc.*, No. 6:07–399, 2008 WL 269057, at *4 (E.D.Ky. Jan. 30, 3008) (citing *Lattin v. Kurdziel*, No. 97–1384, 1998 WL 344070 (6th Cir. May 26, 1998); *Alongi v. Ford Motor Co.*, 386 F.3d 716, 719–22 (6th Cir.2004)). Removal of Plaintiff's state law claims cannot be sus-

---

**6.** The notice of removal may be amended freely before the initial 30–day removal period expires, but after the period ends, the notice may be amended only to set out more specifically the grounds for removal that already have been stated in the original notice. *Alexander v. FedEx Ground Package Sys., Inc.*, No. C 05–0038, 2005 WL 701601, at *2 (N.D.Cal. Mar. 25, 2005).

**7.** The Sixth Circuit's statement in *AmSouth Bank* may not be precisely accurate, see *Palkow*, 431 F.3d at 553 n. 6 (Supreme Court

also has found complete preemption based upon the Price–Anderson Act, 42 U.S.C. § 2014(hh), and certain circuits, including the Sixth, have found complete preemption under § 301 of the Copyright Act, 17 U.S.C. § 301(a)), but is illustrative of the extremely limited nature of complete preemption. In any event, Defendants do not cite, and the Court is not aware of, any Supreme Court or Sixth Circuit precedent establishing NLRA complete preemption.

tained on the basis of NLRA preemption. *See Wrobbel v. Asplundh Constr. Corp.,* 549 F.Supp.2d 868, 875–76 (E.D.Mich. 2008); *Baldwin v. Pirelli Armstrong Tire Corp.,* 927 F.Supp. 1046, 1052 (M.D.Tenn. 1996).

### d. LMRDA Preemption

 The Supreme Court has never held that the LMRDA completely preempts state law. In one instance, however, the Sixth Circuit found complete preemption based upon the LMRDA. *See Davis v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.,* 392 F.3d 834, 838–40 (6th Cir.2004). In *Davis,* the plaintiff asserted claims of age discrimination, conspiracy, wrongful discharge, retaliation, and defamation against the union based upon allegations that the union adopted an amendment to its constitution that dissolved one of its geographic regions with the effect of setting aside the plaintiff's reelection as regional director. 392 F.3d at 835. The union, in turn, disputed the validity of the plaintiff's reelection. The Sixth Circuit concluded that the LMRDA preempted the plaintiff's age discrimination, conspiracy, wrongful termination, and retaliation claims because those claims involved a challenge to a previously conducted union election and necessarily required a determination under federal law regarding the validity of that election. *Id.* at 838–39.

The plaintiff's defamation claims, which were premised upon allegations that the union's convention delegates published statements at the convention accusing the plaintiff of lying about his retirement plans and employing an fraudulent scheme to deny an honest election to the union membership, were also found to be preempted because the Secretary of Labor already had investigated these allegations and concluded that they did not violate the plaintiff's election-related rights, and the plaintiff's defamation claims necessarily would require revisiting this finding.[8] *Id.* at 840.

 This case bears little relationship to *Davis.* Hahn's complaint simply does not involve any challenge to a union election, nor has any investigation been conducted by the Secretary of Labor. In an analogous case involving defamation claims in a union setting, a district court held that "[b]ecause Defendants have not provided the Court with any evidence that Congress intended for the LMRDA to completely preempt state defamation law in the labor context, the mere fact that they could assert a preemptive LMRDA defense before the state court is not sufficient to support removal." *Gerow v. Kleinerman,* 2002 WL 1625417, at *4 (D.N.J. July 2, 2002). "While the LMRDA can sometimes act as a federal defense and preempt a plaintiff's recovery on an other-

---

**8.** By all appearances, the court in *Davis* was discussing ordinary, or conflict preemption, rather than complete preemption, because it held that the defamation claims were extinguished by federal law, not that they were transformed into federal claims. In holding that the plaintiff's defamation claims were preempted by the LMRDA, the court analogized only to cases under the Railway Labor Act, both of which, in turn, addressed ordinary preemption. *See Davis,* 392 F.3d at 840. In a subsequent decision, however, the Sixth Circuit clarified that the Railway Labor Act "does not have the extraordinary preemptive

force necessary to create federal removal jurisdiction." *Roddy v. Grand Trunk W. R.R., Inc.,* 395 F.3d 318, 326 (6th Cir.2005). The continuing validity of *Davis* is, in any event, questionable because remand orders of a district court based upon lack of subject matter jurisdiction clearly are no longer reviewable on appeal. *See Am. Maritime Officers v. Marine Eng'rs Beneficial Ass'n, Dist. No. 1,* 503 F.3d 532, 535 (6th Cir.2007) (citing *Powerex Corp. v. Reliant Energy Servs., Inc.,* 551 U.S. 224, 127 S.Ct. 2411, 2418, 168 L.Ed.2d 112 (2007)).

wise valid state court tort claim, there is no basis for the Court to conclude that Congress intended the LMRDA to completely preempt the state courts from hearing defamation claims that arise in a Union setting." *Id.* at *4, n. 3.

## III. Conclusion

Finding federal subject matter jurisdiction to be completely lacking in this case, the Court rules that remand to state court is necessary.[9] For all of the foregoing reasons, the Court **GRANTS** Plaintiff's motion (Doc. No. 5), and remands this case to state court.

**IT IS SO ORDERED.**

---

9. A federal counterclaim, like the one asserted by Rauch and the Fund, cannot confer subject matter jurisdiction on a district court. *Frasca* *v. Shaker Square Chiropractic, Inc.,* 252 F.Supp.2d 468, 470–72 (N.D.Ohio 2002).